*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

Nos. 13-CV-623 & 13-CV-674

CHASE PLAZA CONDOMINIUM ASSOCIATION, INC.
and DARCY, LLC, APPELLANTS,

v.

JPMORGAN CHASE BANK, N.A., APPELLEE.

Appeals from the Superior Court
of the District of Columbia
(CA-5826-10)

(Hon. Craig Iscoe, Trial Judge)

(Argued April 17, 2014                    Decided August 28, 2014)

*Robert C. Gill*, with whom *Carolyn Due* was on the brief, for appellant Chase Plaza Condominium Association, Inc.

*Rachel Abramson* for appellant Darcy, LLC.

*Thomas J. McKee, Jr.*, with whom *Michael R. Sklaire* was on the brief, for appellee JPMorgan Chase Bank, N.A.

*Thomas Moriarty*, *Jason E. Fisher*, *Laura M. Gagliuso*, *Henry Goodman*, and *Loura Sanchez* filed a brief on behalf of the Community Associations Institute as *amicus curiae* in support of appellant Chase Plaza Condominium Association, Inc.

Before THOMPSON and MCLEESE, *Associate Judges*, and KING, *Senior Judge*.

MCLEESE, *Associate Judge*:  Brian York purchased a condominium unit, financing the purchase through a mortgage loan that was secured by a deed of trust on the unit.  After Mr. York defaulted on his monthly condominium assessments, appellant Chase Plaza Condominium Association, Inc. foreclosed on the unit.  Appellant Darcy, LLC purchased the property at a foreclosure sale.  Several months later, appellee JPMorgan Chase Bank, N.A. filed a complaint alleging that the foreclosure sale was void, because the price at the sale was unconscionably low and because the sale impermissibly purported to extinguish the lien created by the deed of trust.  The trial court agreed on the latter point and granted summary judgment to JPMorgan.  We reverse and remand.

**I.**

Except as noted, the following facts are undisputed.  In July 2005, Mr. York purchased a condominium unit in Washington, D.C.  Mr. York financed the purchase by executing a promissory note for $280,000 that was secured by a deed of trust on the unit.  The deed of trust named Mr. York as "Borrower," First Financial Services, Inc. as "Lender," Federal Title & Escrow Co. as "Trustee," and Mortgage Electronic Registration Systems, Inc. ("MERS") as beneficiary and as a

nominee for First Financial Services, Inc. The deed of trust was recorded in August 2005.

By late 2008, Mr. York was delinquent both on his mortgage payments and on the monthly condominium-association payments he was required to make to Chase Plaza. In April 2009, Chase Plaza recorded a condominium-assessment lien on the unit. Chase Plaza also conducted a title search on the unit, which revealed three outstanding liens: (1) the first deed of trust; (2) a second mortgage for $60,000; and (3) the condominium-assessment lien for $9,415.

Chase Plaza subsequently initiated foreclosure proceedings against Mr. York, seeking to recover six months' worth of unpaid assessments. In January 2010, Chase Plaza filed a notice of foreclosure sale, published the notice, and mailed the notice to the parties named in the deed of trust. The notice specified that the foreclosure sale would not be subject to the first deed of trust. In other words, the notice reflected the position that Chase Plaza's lien had a higher priority than the lien created by the first deed of trust and that if the foreclosure sale generated insufficient proceeds to satisfy Chase Plaza's lien, the foreclosure sale would extinguish the lien created by the first deed of trust. *See generally, e.g.*, *Pappas v. Eastern Sav. Bank, FSB*, 911 A.2d 1230, 1234 (D.C. 2006) (general rule

is that valid foreclosure sale extinguishes subordinate liens that cannot be satisfied from proceeds of sale).

In February 2010, Darcy purchased the unit for $10,000 at a foreclosure sale.[1]  Darcy was the only bidder at the sale.  A deed of trust reflecting Darcy's purchase was executed in March 2010.

In April 2010, JPMorgan commenced foreclosure proceedings against Mr. York for failure to make mortgage payments.  After discovering that Chase Plaza had already foreclosed on the unit, JPMorgan filed a complaint against Chase Plaza and Darcy requesting that the trial court set aside the foreclosure sale and declare that JPMorgan held title to the unit.  In explaining its interest in the unit, JPMorgan stated that in March 2009 MERS, which was designated as the beneficiary and nominee in the first deed of trust, had assigned its interest in the deed of trust to an entity JPMorgan referred to as Washington Mutual.  JPMorgan further stated that it had acquired Washington Mutual in 2008, and that it also was the current holder of the original promissory note.

---

[1]  After Chase Plaza deducted the six months of unpaid condominium assessments, the interest on the unpaid assessments, and various expenses associated with the foreclosure sale, the remaining balance from the foreclosure-sale proceeds was $478.  Chase Plaza forwarded the $478 to MERS as the nominee of record under the first deed of trust, but that money was returned to Chase Plaza.

The trial court granted partial summary judgment to JPMorgan. Specifically, the trial court (1) determined that JPMorgan had standing to bring the action; (2) determined that Chase Plaza could not lawfully extinguish the first deed of trust; (3) voided the foreclosure sale because the unit had not been sold subject to the first deed of trust; and (4) declared that JPMorgan held title to the unit. Pursuant to the stipulation of the parties, the trial court subsequently dismissed JPMorgan's remaining claims.

## II.

We begin by addressing three threshold issues:  whether JPMorgan has standing to raise its claims; whether the trial court's order granting summary judgment is void because it violated the automatic stay under federal bankruptcy law; and whether Mr. York and Washington Mutual are indispensable parties to this case under Rule 19 of the Superior Court Rules of Civil Procedure.

## A.

Chase Plaza and Darcy argue that JPMorgan lacks an interest in the unit sufficient to confer standing on JPMorgan.  We disagree.  JPMorgan alleges, and

Chase Plaza and Darcy do not dispute, that JPMorgan has physical possession of the original promissory note, which is a negotiable instrument indorsed in blank. "An indorsement in blank is essentially a stamp that indorses an instrument without specially indorsing it to a specific party. Usually it makes that instrument payable to the bearer and transfers with it legal title to security attached to the instrument." *Leake v. Prensky*, 798 F. Supp. 2d 254, 256 n.3 (D.D.C. 2011). Under District of Columbia law, the holder of a negotiable instrument indorsed in blank is normally entitled to enforce the instrument, including through foreclosure proceedings. *See* D.C. Code § 28:3-301 (2012 Repl.) (holder of negotiable instrument may enforce instrument), -205 (b) (2012 Repl.) (instrument indorsed in blank is payable to bearer and may be negotiated by transfer of possession); *Leake*, 789 F. Supp. 2d at 256-57 (bank in possession of note indorsed in blank was entitled to commence non-judicial foreclosure proceedings); *Grant II v. BAC Home Loans Servicing*, No. 10-cv-01543, 2011 WL 4566135, at *4 (D.D.C. Sept. 30, 2011) ("[A]s the Note is indorsed in blank, [the loan-servicing company's] possession of the Note establishes its status as holder of the Note . . . . As holder of the note, [the loan-servicing company] could properly enforce its provisions" through foreclosure proceedings.). We therefore conclude that JPMorgan has standing to seek to set aside the foreclosure sale.[2]

---

[2] JPMorgan also claims to be a successor in interest under the deed of trust,

(continued . . .)

**B.**

During the course of the events at issue in this case, two of the dramatis personae declared bankruptcy: Mr. York, who had purchased the unit in 2005 but whose default in 2008 led to the 2010 foreclosure, declared personal bankruptcy in June 2011; and Washington Mutual, Inc., which arguably was assigned an interest in the promissory note in 2009, declared bankruptcy under Chapter 11 of the

---

(. . . continued)

because MERS, a beneficiary and nominee under the deed of trust, transferred its interest to Washington Mutual, which had been purchased by JPMorgan. Chase Plaza and Darcy argue, however, that it is unclear whether JPMorgan obtained an interest in the deed of trust, because (1) it is unclear to which of several Washington Mutual entities MERS transferred its interest, (2) JPMorgan only purchased some, not all, of the assets of Washington Mutual Bank, and (3) JPMorgan's purchase occurred before the date of MERS's transfer of its interest in the deed of trust to Washington Mutual. JPMorgan, however, can seek to protect its interests under the promissory note even if it is not a successor in interest under the deed of trust, because "the rights under the Deed of Trust follow the Note." *Grant II*, 2011 WL 4566135, at *4; *see also Smith v. Wells Fargo Bank*, 991 A.2d 20, 29-30 n.19 (D.C. 2010) ("The transfer of the note carries with it the security, without any formal assignment or delivery, or even mention of the latter.") (internal quotation marks omitted). Because JPMorgan's interest under the promissory note is sufficient to confer standing on JPMorgan, we need not address whether JPMorgan obtained an interest in the deed of trust through Washington Mutual. Chase Plaza and Darcy also raise other challenges to the validity of JPMorgan's alleged interest in the unit, including that JPMorgan cannot assert any interest in the unit against Chase Plaza and Darcy because JPMorgan failed to properly record documents relating to the transactions giving rise to JPMorgan's alleged interest. We do not view those contentions as going to JPMorgan's standing, and in light of our disposition of the case on the merits, we see no need at this juncture to address the additional arguments raised by Chase Plaza and Darcy.

federal bankruptcy laws in 2008. Under federal bankruptcy law, the filing of certain kinds of bankruptcy petitions triggers an automatic stay. 11 U.S.C. § 362 (a) (2012) (filing petition for bankruptcy relief "operates as a stay"). That stay extends, among other things, to certain lawsuits "against the debtor . . . or to recover a claim against the debtor"; "to obtain possession of property of the [bankruptcy] estate or of property from the estate or to exercise control over property of the estate"; to enforce a lien against property of the estate; or to enforce against property of the debtor a lien securing a claim that arose before commencement of the bankruptcy proceeding. *Id.* at § 362 (a)(1), (3)-(5). Judgments rendered in violation of the automatic stay are void. *Jones v. Cain*, 804 A.2d 322, 329 (D.C. 2002). This court has the authority to decide in the first instance whether a trial-court ruling violated the bankruptcy stay. *See id.* at 325-29 (deciding in first instance that judgment against defendant violated automatic stay and was therefore void, because judgment was rendered after defendant filed petition for bankruptcy).

We perceive no violation of the automatic stay. With respect to Mr. York's bankruptcy proceedings, which began in 2011, JPMorgan obtained an order lifting the stay to permit JPMorgan to foreclose against the unit "free and clear of any interest" of Mr. York or the bankruptcy estate. Moreover, Mr. York's interest in

the unit had been foreclosed upon in 2010, without any objection from Mr. York; Mr. York did not list the unit on his schedule of assets in the bankruptcy proceedings; and Mr. York denied owning the unit as of the time he filed for bankruptcy. Under the circumstances, we agree with the parties that the unit was not property of Mr. York's bankruptcy estate and that the present lawsuit did not otherwise run afoul of the automatic stay. *Cf., e.g.*, *Foskey v. Plus Props., LLC*, 437 B.R. 1, 11-12 (D.D.C. 2010) (property in which debtor has no legal or equitable interest "is deemed to be outside the property of the estate" and not subject to automatic stay; automatic stay did not bar post-petition acts concerning property previously owned by debtor but sold in pre-petition tax sale).

With respect to Washington Mutual, any interest it might have in the first deed of trust did not arise until 2009, after Washington Mutual, Inc. filed for bankruptcy. Where the bankruptcy debtor is a corporation that continues to operate during the pendency of the bankruptcy proceeding, as apparently was the case with Washington Mutual, Inc., property obtained by the debtor corporation after the filing of the bankruptcy petition may well be property of the bankruptcy estate. *See* 3 Alan N. Resnick & Henry J. Sommer, *Collier Bankruptcy Manual* § 541.02, at 541-6 to -7 (4th ed. 2014) (citing 11 U.S.C. § 541 (a)(6)-(7) (2012)). But it is not at all clear on the record before us whether the interest in the

deed of trust should properly be viewed as part of the Washington Mutual, Inc. bankruptcy estate. There are a number of different but apparently related entities with some variant of the name Washington Mutual. The document assigning MERS's interest in the deed of trust refers to Washington Mutual without clearly indicating the precise entity to which the interest was being assigned. Moreover, JPMorgan purchased some of the assets of Washington Mutual Bank on September 25, 2008, the day before Washington Mutual, Inc. filed its bankruptcy petition. JPMorgan appears to claim that the interest subsequently transferred to Washington Mutual by MERS fell within the scope of that transaction, and thus that JPMorgan rather than the bankruptcy estate is the owner of the interest in the deed of trust. It appears that there has been significant litigation in the bankruptcy case with respect to the question of which Washington Mutual assets were acquired by JPMorgan in the September 2008 transaction. We cannot tell from the record in this case whether this case involved property of Washington Mutual, Inc.'s bankruptcy estate or otherwise violated the automatic stay. Under the circumstances, we have no basis upon which to conclude that the trial court's judgment in this case is void as a violation of the automatic stay. *Cf. In re Angelo*, 480 B.R. 70, 83 (Bankr. D. Mass. 2012) ("A party seeking to establish that a

judgment was entered in violation of the automatic stay bears the burden of proof.") (citation omitted).[3]

## C.

Finally, we conclude that Mr. York and Washington Mutual are not indispensable parties to this case. Under Rule 19 (b) of the Superior Court Rules of Civil Procedure, a court may not grant relief in the absence of an indispensable party. To qualify as an indispensable party, a person must either be necessary to grant complete relief to the parties or "claim[] an interest relating to the subject of the action." Super. Ct. Civ. R. 19 (a). Because there is insufficient evidence in this record that either Mr. York or Washington Mutual has a present interest in the unit or is otherwise essential to grant complete relief to the parties, we have no basis to find that they are indispensable parties. *Cf., e.g.*, *Habib v. Miller*, 284 A.2d 56, 56-58 (D.C. 1971) (company that claimed "no interest" in deposit was not indispensable in action to recover deposit).

---

[3] As a precaution, we are sending a copy of this opinion to the bankruptcy judge and the bankruptcy trustee in the Washington Mutual, Inc. bankruptcy proceeding.

**III**.

Turning to the merits, we review de novo orders granting summary judgment. *District of Columbia v. Place*, 892 A.2d 1108, 1110-11 (D.C. 2006). "Summary judgment is only appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Ward v. Wells Fargo Bank, N.A.*, 89 A.3d 115, 126 (D.C. 2014) (internal quotation marks omitted). "In considering summary judgment, we view the facts in the light most favorable to the non-moving [parties]." *Id.* (internal quotation marks omitted).

This case turns on the proper understanding of D.C. Code § 42-1903.13 (2012 Repl.), which addresses condominium foreclosures. Chase Plaza and Darcy argue that a condominium association is permitted to foreclose on a six-month condominium-assessment lien and distribute the proceeds from the foreclosure sale first to satisfy the condominium-assessment lien and then to satisfy any remaining liens in order of lien priority. Any liens that are unsatisfied by the foreclosure-sale proceeds are extinguished, and the foreclosure-sale purchaser acquires free and clear title. JPMorgan argues, to the contrary, that although a condominium association is permitted to foreclose on a six-month condominium-assessment lien,

the foreclosure is subject to any previously recorded first mortgage lien. We agree with Chase Plaza and Darcy.

**A.**

Whether the foreclosure sale extinguished the first deed of trust under D.C. Code § 42-1903.13 is a question of statutory interpretation that we determine de novo. *Hernandez v. Banks*, 84 A.3d 543, 552 (D.C. 2014). "The first step in construing a statute is to read the language of the statute and construe its words according to their ordinary sense and plain meaning." *O'Rourke v. District of Columbia Police & Firefighters' Ret. & Relief Bd.*, 46 A.3d 378, 383 (D.C. 2012) (internal quotation marks omitted). "The literal words of a statute, however, are not the sole index to legislative intent, but rather, are to be read in the light of the statute taken as a whole, and are to be given a sensible construction and one that would not work an obvious injustice." *Columbia Plaza Tenants' Ass'n v. Columbia Plaza Ltd. P'ship*, 869 A.2d 329, 332 (D.C. 2005) (internal quotation marks and brackets omitted). We "consult the legislative history of a statute for guidance as necessary." *Robert Siegel, Inc. v. District of Columbia*, 892 A.2d 387, 393 (D.C. 2006). "[A]s a general rule, we presume that where a legislature adopts a term of art, it knows and adopts the cluster of ideas that were attached to each

borrowed word." *Doe No. 1 v. Burke*, 91 A.3d 1031, 1041 (D.C. 2014) (internal quotation marks omitted). Moreover, "[n]o statute should be construed as altering the common law, farther than its words import. It is not to be construed as making any innovation upon the common law which it does not fairly express." *Estate of Gulledge*, 673 A.2d 1278, 1281 (D.C. 1996) (internal quotation marks omitted); *see also United States v. Texas*, 507 U.S. 529, 534 (1993) ("[S]tatutes which invade the common law . . . are to be read with a presumption favoring the retention of long-established and familiar principles, except when a statutory purpose to the contrary is evident.") (internal quotation marks omitted).

The District of Columbia Condominium Act governs the creation and operation of condominiums. D.C. Code § 42-1901.01 et seq. (2012 Repl.). Under the Act, a condominium association may impose a lien against a unit for non-payment of condominium-association assessments. *Id.* at § 42-1903.13 (a). The lien is "prior to any other lien or encumbrance except [among other things,] . . . [a] first mortgage . . . or [first] deed of trust . . . recorded before the date on which the assessment sought to be enforced became delinquent[.]" *Id.* at § 42-1903.13 (a)(1)(B). The Act, however, provides the highest priority to liens relating to the most recent six months of condominium assessments:

> The lien shall also be prior to a [first] mortgage or [first] deed of trust . . . to the extent of the common expense assessments . . . which would have become due in the absence of acceleration during the [six] months immediately preceding institution of an action to enforce the lien.

*Id.* at § 42-1903.13 (a)(2). Thus, the Act effectively splits condominium-assessment liens into two liens of differing priority: (1) a lien for six months of assessments that is higher in priority than the first mortgage or first deed of trust -- sometimes called a "super-priority lien" -- and (2) a lien for any additional unpaid assessments that is lower in priority than the first mortgage or first deed of trust.

The Act does not expressly address what happens when, as in this case, a condominium association forecloses solely on its super-priority lien and the proceeds of the sale are not sufficient to pay off a first deed of trust. A general principle of foreclosure law, however, potentially provides an answer: liens with lower priority are extinguished if a valid foreclosure sale yields proceeds insufficient to satisfy a higher-priority lien. *Pappas*, 911 A.2d at 1234. That general principle is derived from the common law and is well settled in this and other jurisdictions. *See, e.g.*, *Waco Scaffold & Shoring Co. v. 425 Eye St. Assocs.*, 355 A.2d 780, 783 (D.C. 1976) (foreclosure sale based on lien with "superior" priority extinguished liens with lower priority); *In re Cypresswood Land Partners,*

*I*, 409 B.R. 396, 437 (Bankr. S.D. Tex. 2009) (noting "common-law rule that foreclosure of a senior lien extinguishes all junior liens") (internal quotation marks omitted); *Conseco Fin. Servicing Corp. v. J & J Mobile Homes, Inc.*, 120 S.W.3d 878, 885 (Tex. App. 2003) (relying on "common-law rule that foreclosure of a senior lien extinguishes all junior liens"); *cf. Abdoney v. York*, 903 So. 2d 981, 983 (Fla. Dist. Ct. App. 2005) ("Under the common law, the foreclosure of a senior mortgage extinguishes the liens of any junior mortgagees . . . ."); *Restatement (Third) of Property (Mortgages)* § 7.1 (2014) ("A valid foreclosure of a mortgage terminates all interests in the foreclosed real estate that are junior to the mortgage being foreclosed . . . .").[4]

The parties in this case do not dispute that, under D.C. Code § 42-1903.13 (a)(2), Chase Plaza's super-priority lien had a higher priority than JPMorgan's first deed of trust. The parties also do not dispute that the proceeds from the foreclosure sale were insufficient to satisfy the first deed of trust. Taking the language of the statute together with basic principles of foreclosure law, it

---

[4] A "junior lien" is a lien that "is subordinate to one or more other liens on the same property[,]" and a "senior lien" is a lien that "has priority over liens on the same property." *Black's Law Dictionary* 1063, 1064 (10th ed. 2014); *see also, e.g.*, *Indiana Lawrence Bank v. PSB Credit Servs., Inc.*, 706 N.E.2d 570, 574 n.6 (Ind. Ct. App. 1999); *City of Chanute v. Polson*, 836 P.2d 6, 10 (Kan. Ct. App. 1992).

would seem to follow that Chase Plaza's foreclosure sale extinguished JPMorgan's first deed of trust. The concept of a split-priority lien does not appear to have been part of the common law, however, and we therefore confront the question whether the general principles of foreclosure law apply in this novel context. For the reasons that follow, we conclude that they do.

First, JPMorgan's interpretation of D.C. Code § 42-1903.13 (a)(2) would create a six-month condominium-assessment lien that had priority over the first deed of trust but could not extinguish the first deed of trust. Such an interpretation would be a significant departure from the basic principle that foreclosure on a higher priority lien extinguishes lower-priority liens. The language of § 42-1903.13 (a)(2) does not suggest that the District of Columbia Council intended such a departure. *Cf. Conseco Fin. Servicing Corp.*, 120 S.W.3d at 885 ("Nothing in the legislative history or in the language of the statute itself indicates legislative intent to super[s]ede the common-law rule that foreclosure of a senior lien extinguishes all junior liens. Indeed, if junior liens were to survive a foreclosure sale, buyers would have no incentive to bid on the property."). We are inclined to think that if the Council had intended to depart from well-settled principles of foreclosure law, it would have done so explicitly. *See, e.g.*, *Newell-Brinkley v. Walton*, 84 A.3d 53, 58 (D.C. 2014) ("[I]t is highly unlikely that the Council would

have altered preexisting law in so fundamental a way implicitly rather than explicitly.") (citing *Whitman v. American Trucking Ass'ns*, 531 U.S. 457, 468 (2001) ("Congress . . . does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions—it does not, one might say, hide elephants in mouseholes.")); *cf., e.g.*, *Samantar v. Yousuf*, 560 U.S. 305, 320 n.13 (2010) ("Congress is understood to legislate against a background of common-law . . . principles") (internal quotation marks omitted; ellipses in *Samantar*).

The legislative history of D.C. Code § 42-1903.13 (a)(2) supports the same conclusion. The provision creating the six-month super-priority lien for condominium assessments was enacted in 1991. Condominium Act of 1976 Reform Amendment Act of 1990, D.C. Law 8-233, § 2 (gg)(1), 38 D.C. Reg. 283-84 (1991). The Committee Report on the Act describes that provision as giving condominium "associations the maximum flexibility in collecting unpaid condominium assessments." D.C. Council, Report on Bill 8-65, at 3 (Nov. 13, 1990). The provision was modeled on the Uniform Common Ownership Interest Act ("UCOIA") and the Uniform Condominium Act ("UCA"), each of which includes a quite similar provision creating a six-month super-priority lien. UCOIA § 3-116 (b), 7 U.L.A. 122 (1982); UCA § 3-116 (b), 7 U.L.A. 626 (amended 1980). The official comments to the UCOIA and UCA indicate that the drafters of

those uniform laws understood that foreclosure on the super-priority lien could extinguish a first mortgage or first deed of trust, but expected that mortgage lenders would take the necessary steps to prevent that result, either by requiring payment of assessments into an escrow account or by paying assessments themselves to prevent foreclosure. UCOIA § 3-116, cmt. 1, 7 U.L.A. 124; UCA § 3-116, cmt. 2, 7 U.L.A. 627. An example provided by the drafters of the uniform laws further illustrates the point, describing the first mortgage lien as "junior" to the six-month super-priority lien, and noting that lenders could protect themselves by requiring escrow of six months of assessments, as lenders do with property taxes. UCA § 2-118, ex. 1B, 7 U.L.A. 571, 572.[5]

Because the pertinent provision of the District's Condominium Act is based on the UCA and UCOIA, the official comments by the drafters of those uniform acts provide important guidance in construing our provision. *See generally, e.g.*,

---

[5] We also note a recent report of the Joint Editorial Board for Uniform Property Acts, which includes representatives of the Uniform Law Commission, the American Bar Association Real Property, Trust and Estate Law Section, and the American College of Real Estate Lawyers. That report concludes that foreclosure pursuant to the six-month super-priority lien under the UCOIA is properly understood to extinguish a first mortgage lien, leaving the buyer at the foreclosure sale with clear title to the property. Report of the Joint Editorial Bd. for Unif. Real Prop. Acts, *The Six-Month "Limited Priority Lien" for Association Fees Under the Uniform Common Interest Ownership Act*, at 8-10 (June 1, 2013).

*Platt v. Aspenwood Condo. Ass'n, Inc.*, 214 P.3d 1060, 1063-64 (Colo. App. 2009) (relying on drafters' comments to UCOIA for guidance in interpreting state statute based on UCOIA; "We accept the intent of the drafters of a uniform act as the General Assembly's intent when it adopts that uniform act.") (internal quotation marks omitted); *Hunt Club Condos., Inc. v. Mac-Gray Servs., Inc.*, 721 N.W.2d 117, 123-25 (Wis. Ct. App. 2006) (official and published comments accompanying provision of UCA are "valid indicator" of state legislature's intent in enacting corresponding state statute).[6]

Taken together, the language of D.C. Code § 42-1903.13 (a)(2), general principles of foreclosure law, and the legislative history of the provision support a conclusion that Chase Plaza's foreclosure pursuant to the super-priority lien

---

[6] "[O]rdinarily, the views of a subsequent legislature form a hazardous basis for inferring the intent of an earlier one." *Hargrove v. District of Columbia*, 5 A.3d 632, 637 (D.C. 2010) (brackets and internal quotation marks omitted). We do note, however, that within a year of the enactment of the provision creating the super-priority lien, the Council considered a proposal to repeal the provision. D.C. Council, Report on Bill 9-240, at 4 (Dec. 12, 1991). In support of the proposal, the Department of Consumer and Regulatory Affairs ("DCRA") submitted a report contending that the super-priority lien provision created an "obvious threat [to lending institutions] of the use of foreclosure proceedings to collect unpaid assessments." Statement of Aubrey H. Edwards on Bill 9-240, Dir., DCRA, at 9 (Oct. 30, 1991). The DCRA report further noted that the provision could have "a chilling effect on the availability of condominium mortgage loans." *Id.* After considering the DCRA report, the Council declined to repeal the provision creating the super-priority lien, because "[n]o adverse effect on lending" had occurred in states that had enacted such a provision. D.C. Council, Report on Bill 9-240, at 4.

extinguished JPMorgan's first deed of trust. *See, e.g.*, *7912 Limbwood Ct. Trust v. Wells Fargo Bank, N.A.*, 979 F. Supp. 2d 1142, 1146-53 (D. Nev. 2013) (under Nevada law, foreclosure sale on super-priority lien extinguished all junior interests, including first deed of trust); *Summerhill Vill. Homeowners Ass'n v. Roughley*, 289 P.3d 645, 647-48 (Wash. Ct. App. 2012) (same under Washington law). *But see, e.g.*, *Premier One Holdings, Inc. v. BAC Home Loans Servicing LP*, No. 2:13-CV-895, 2013 WL 4048573, at *3-6 (D. Nev. Aug. 9, 2013) (under Nevada law, homeowner association's foreclosure on super-priority lien did not extinguish first deed of trust, and foreclosure-sale purchaser took property subject to first deed of trust) (citing cases); *Bayview Loan Servicing, LLC v. Alessi & Koenig, LLC*, 962 F. Supp. 2d 1222, 1226-30 (D. Nev. 2013) (same).

## B.

We are not persuaded by JPMorgan's arguments to the contrary. First, JPMorgan contends that D.C. Code § 42-1903.13 (a)(2) does not allow foreclosure on a super-priority lien to extinguish a first deed of trust, because the provision does not explicitly state that the super-priority lien is a "senior lien" and that the first deed of trust is a "junior lien." JPMorgan does not cite authority for its contention that the use of the terms "senior lien" and "junior lien" is essential to

the application of the general principle that foreclosure on a lien with higher priority extinguishes a lien with lower priority. To the contrary, our cases discussing that principle of foreclosure law do not invariably use the terms "senior lien" and "junior lien." *See, e.g.*, *Pappas*, 911 A.2d at 1234 ("[W]here a valid foreclosure sale yields proceeds insufficient to satisfy a priority lien, the result is extinguishment of subordinate liens.") (citing cases). Moreover, there is no mention of the terms "senior lien" or "junior lien" in Title 42, Chapter 8 of the D.C. Code, which governs mortgages and deeds of trust, D.C. Code § 42-801 et seq. (2012 Repl.), or in Title 40 of the D.C. Code, which governs liens. D.C. Code § 40-101 et seq. (2012 Repl.). Under the logic of JPMorgan's theory, the absence of such terminology would mean that foreclosure on the liens governed by these provisions could not operate to extinguish liens with lower priority, which would turn the general rule of foreclosure law on its head. Focusing more specifically on the Condominium Act, § 42-1903.13 (a)(1)(B) does not use the term "senior lien" when referring to the priority of the first deed of trust, but JPMorgan concedes that foreclosure on the first deed of trust extinguishes liens with lower priority. In sum, the terms "senior lien" and "junior lien" are simply one way of referring to liens with higher and lower priority, see *supra* page 16 n.4, and the absence of those terms from § 42-1903.13 (a)(2) does not affect the applicability of the general rule

that foreclosure on a lien with greater priority extinguishes liens with lower priority.

Second, JPMorgan points out that condominium-assessment liens are given priority only "to the extent" of six months' worth of assessments. D.C. Code § 42-1903.13 (a)(2). According to JPMorgan, the words "to the extent" mean that foreclosure on the super-priority lien cannot extinguish a first deed of trust. We disagree. The words "to the extent" limit the amount and size of the condominium-assessment lien that is given super-priority status. *Id.* at § 42-1903.13 (a)(2) (condominium-assessment lien is "prior to a [first] mortgage or [first] deed of trust . . . *to the extent* of the common expense assessments . . . which would have become due . . . [six] months immediately preceding" foreclosure action) (emphasis added). There is no indication that the words were intended to impose any other limit, much less to create a novel lien with higher priority and the right to foreclose, but without the ability extinguish a lower-priority lien.

Third, JPMorgan argues it would be unreasonable as a matter of policy to interpret D.C. Code § 42-1903.13 (a)(2) to permit six-month condominium-assessment liens to extinguish first mortgages or first deeds of trust. JPMorgan points out that the Condominium Act does not require that the condominium

association give notice to mortgage lenders or other lienholders before foreclosure and does not permit either the property owner or the mortgage lender to redeem foreclosed property by paying the delinquent amounts.[7] According to JPMorgan, permitting condominium-assessment foreclosures to extinguish mortgage liens under such circumstances will leave mortgage lenders unable to protect their interests, which in turn will cripple mortgage lending in the District of Columbia. These are legitimate policy concerns, but Chase Plaza and Darcy point to corresponding policy arguments that support interpreting § 42-1903.13 (a)(2) to permit foreclosure on the six-month super-priority lien to extinguish a first mortgage or first deed of trust. Specifically, Chase Plaza and Darcy contend that if foreclosure on super-priority condominium-association liens did not extinguish mortgage liens, then condominium associations often might be unable to find buyers at foreclosure sales, and thus condominium associations would be unable to take prompt steps to obtain timely payment of assessments. *See* Report of the Joint Editorial Bd. for Unif. Real Prop. Acts, *The Six-Month "Limited Priority Lien" for Association Fees Under the Uniform Common-Interest Ownership Act*, at 2-6

---

[7] With respect to the issue of notice, it appears that Chase Plaza did give notice of foreclosure to all parties listed on the first deed of trust, but JPMorgan did not receive notice because it had failed to record its subsequently obtained interest in the unit. We also note that JPMorgan has not argued that the lack of a notice requirement renders D.C. Code § 42-1903.13 (a)(2) unconstitutional either facially or as applied to JPMorgan in this case. We therefore have no occasion to address those issues.

("Joint Editorial Bd. Report"); UCOIA § 3-116, cmt. 1, 7 U.L.A. 124 (purpose of super-priority lien is "[t]o ensure prompt and efficient enforcement of the association's lien for unpaid assessments"); *cf. Park Place E. Condo. Ass'n v. Hovbilt, Inc.*, 652 A.2d 781, 783 (N.J. Super. Ct. Ch. Div. 1994) ("The legislative scheme for collection of assessments . . . against individual unit owners is a recognition that such [assessments] are the financial life-blood of the Association."). Moreover, there is support for the idea that lenders can decrease the risk that their mortgage liens will be extinguished, by among other things creating an escrow requirement. Joint Editorial Bd. Report, at 4; UCOIA § 3-116, cmt. 1, 7 U.L.A. 124; UCA § 3-116, cmt. 2, 7 U.L.A. 627.

Our role is not to resolve this policy dispute between the parties or to second-guess the policy determinations of the Council. *See, e.g.*, *Allman v. Snyder*, 888 A.2d 1161, 1169 (D.C. 2005) ("we have no license to substitute our views of public policy for those of the legislature"). Rather, we simply conclude that JPMorgan has failed to establish that it would be absurd or clearly unreasonable to interpret D.C. Code § 42-1903.13 (a)(2) as permitting a condominium association's six-month super-priority lien to extinguish a first mortgage or first deed of trust.

Finally, relying on *Malakoff v. Washington*, 434 A.2d 432, 435 (D.C. 1981), JPMorgan argues that the six-month condominium-assessment lien could be given super-priority status only if the legislature made it clear that it intended that result. The Council did make explicit, however, that a condominium association's six-month lien was to be given priority over a first mortgage or first deed of trust. The issue in this case is whether that super-priority extends to extinguishing a first mortgage or first deed of trust, and *Malakoff* does not suggest that a clear statement is required on that topic.

## IV.

Finally, JPMorgan argues that Chase Plaza's by-laws do not permit Chase Plaza to extinguish JPMorgan's first deed of trust. We conclude otherwise.

Under the Condominium Act, a condominium association can choose to forego its power to foreclose on property based on the owner's failure to pay assessments. D.C. Code § 42-1903.13 (c)(1) (condominium instruments may prohibit association from non-judicial foreclosure if such foreclosure is "specifically and expressly prohibited by the condominium instruments"). This provision, however, does not seem to be relevant, because JPMorgan does not

contend that Chase Plaza's by-laws waived Chase Plaza's right of non-judicial foreclosure. Rather, JPMorgan argues that Article XI, § (2)(D) of Chase Plaza's by-laws provides that a first mortgage or first deed of trust is "prior to" the condominium-assessment lien. It is unclear whether such a provision in a condominium association's by-laws could constitute an effective waiver of the association's statutory right of priority. *See* D.C. Code § 42-1901.07 ("Except as expressly provided by this chapter, a provision of this chapter may not be varied by agreement and any right conferred by this chapter may not be waived."). In any event, the Fourth Amendment to Chase Plaza's by-laws provides that Chase Plaza may foreclose on an assessment lien "pursuant to D.C. Code Section 45-1853 [now codified at D.C. Code § 42-1903.13]." The latter provision appears to authorize Chase Plaza to rely on the rights conferred upon it under § 42-1903.13 (a)(2). To the extent that the Fourth Amendment and Article XI, § (2)(D) of the by-laws appear to contradict each other, the D.C. Code provides a rule to resolve any conflict. In the event of a conflict among condominium instruments, "a construction consistent with [Chapter Nineteen of Title 42] controls in all cases over any inconsistent construction." D.C. Code § 42-1902.07. We therefore must construe the by-laws as a whole as permitting Chase Plaza to exercise its rights under the Condominium Act to foreclose on its six-month super-priority lien and to thereby extinguish the first deed of trust.

In sum, we hold that a condominium association can extinguish a first deed of trust by foreclosing on its six-month super-priority lien under D.C. Code § 42-1903.13 (a)(2). We therefore reverse the trial court's grant of summary judgment to JPMorgan and remand for further proceedings.[8]

*So ordered.*

---

[8] Among the issues that remain to be resolved on remand is JPMorgan's claim that the foreclosure sale should be invalidated because the purchase price was unconscionably low.