*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

Nos. 23-CV-0492 & 23-CV-0669


SARAH STAAB, APPELLANT,

V.

WELLS FARGO BANK, N.A., APPELLEE.


Appeals from the Superior Court
of the District of Columbia
(2015-CA-004100-R(RP))

(Hon. Fern Flanagan Saddler & Hon. Maurice A. Ross, Motions Judges)


(Argued June 6, 2024                    Decided December 12, 2024)

*Robert C. Gill* for appellant.

*Daniel Z. Herbst* for appellee.

*Michael A.F. Johnson* filed a brief on behalf of *Federal Housing Finance Agency*, as amicus curiae.

Before EASTERLY, MCLEESE, and DEAHL, *Associate Judges*.

EASTERLY, Associate Judge: Sarah Staab purchased a condominium unit at a foreclosure sale conducted by the condominium association to recover unpaid fees. In this appeal, she challenges two Superior Court orders ruling, inter alia, that the

sale of the unit to Ms. Staab was barred by the Federal Foreclosure Bar, 12 U.S.C. § 4617(j)(3), and thus is void, and granting summary judgment to Wells Fargo Bank, N.A. ("Wells Fargo") on its claims for judicial foreclosure, declaratory judgment, and quiet title. Ms. Staab does not contest that, at the time she purchased it, the property was encumbered by a deed of trust owned by the Federal Housing Finance Agency ("FHFA") and the Federal National Mortgage Association ("Fannie Mae") and serviced by Wells Fargo. Nor does she dispute the application of the Federal Foreclosure Bar. Instead, Ms. Staab makes three procedural arguments. She asserts the Superior Court (1) applied the incorrect statute of limitations to determine that Wells Fargo's amended complaint, which raised for the first time facts and claims related to the Federal Foreclosure Bar, was not time barred; (2) abused its discretion by granting Wells Fargo leave to amend its complaint, years after it first filed its action for judicial foreclosure; and (3) abused its discretion by not joining the condominium association as an indispensable party to the action. We are unpersuaded.

First, Wells Fargo's initial action for judicial foreclosure was indisputably timely, having been brought within three years of the foreclosure sale at which Ms. Staab purchased the property. The additional facts and arguments Wells Fargo subsequently raised—though incorporated in an amended complaint—were in direct response to an affirmative defense pled by Ms. Staab, and thus they were not

required to be a part of the bank's initial complaint. Further, the relief ultimately granted was within the court's equity powers to award on the judicial foreclosure claim alone. Second, we conclude that, whether or not the Superior Court abused its discretion in granting Wells Fargo leave to amend its complaint, any error would be harmless because Wells Fargo could permissibly have raised the same arguments when it sought summary judgment on its judicial foreclosure claim. Third, we conclude that the Superior Court did not abuse its discretion in determining that the condominium association was not an essential party under Super. Ct. Civ. R. 19(a)(1). Accordingly, we affirm the Superior Court's judgment.

## I. Background

The following facts are not in dispute. In 2006, William J. Sutcliffe borrowed $193,000 from Wells Fargo to purchase a condominium unit on Pennsylvania Avenue, NW. Mr. Sutcliffe secured the loan by executing a promissory note and a deed of trust on the property in Wells Fargo's favor. Shortly after, Wells Fargo transferred ownership of the promissory note and deed of trust to Fannie Mae,[1] but continued to service the mortgage on Fannie Mae's behalf.

---

[1] Ms. Staab notes that the transfer of the mortgage from Wells Fargo to Fannie Mae is not a matter of public record but does not appear to dispute that the transfer occurred.

In 2008, Congress enacted the Housing and Economic Recovery Act of 2008 ("HERA"), Pub. L. No. 110-289, 122 Stat. 2654 (2008) (codified in scattered sections of 10 U.S.C., 12 U.S.C., 15 U.S.C., 26 U.S.C., 31 U.S.C., 37 U.S.C., 38 U.S.C., and 42 U.S.C.), which authorized the FHFA to place Fannie Mae under a conservatorship, *see* 12 U.S.C. § 4617(a)(2). As Fannie Mae's conservator, the FHFA "immediately succeed[ed]" to all of Fannie Mae's "rights, titles, powers, and privileges." 12 U.S.C. § 4617(b)(2)(A). HERA also created what is known as the "Federal Foreclosure Bar," which prohibits FHFA property from being "subject to . . . foreclosure[] or sale without the consent of the Agency." *Id.* at § 4617(j)(3).

In 2011, Mr. Sutcliffe defaulted on his mortgage and fell behind on his condominium assessments. The Residential Association of the Pennsylvania ("Residential Association")—the condominium association for the property— recorded two liens against Mr. Sutcliffe and initiated a foreclosure action against the property under D.C. Code § 42-1903.13. In 2013, it sold the property to Ms. Staab for $15,000.

In 2015, Wells Fargo filed a judicial foreclosure action in D.C. Superior Court under D.C. Code § 42-816 against Mr. Sutcliffe and Ms. Staab. The complaint did not mention that Fannie Mae now owned the deed of trust. The following month, Ms. Staab filed an answer that raised several affirmative defenses, including that

"[a]ny interest [Wells Fargo] may have had in the [p]roperty was extinguished by the sale of the [p]roperty to [Ms.] Staab."[2] The case was delayed for almost four years, during which time Wells Fargo unsuccessfully attempted to serve Mr. Sutcliffe (and eventually received permission to effect service via publication). In 2019, Wells Fargo moved for leave to amend its complaint to add the Residential Association as a defendant and to add new facts—including that Fannie Mae owned the mortgage—and new claims—including a claim for declaratory judgment that the Residential Association's foreclosure and sale of the property to Ms. Staab without the FHFA's consent was void under the Federal Foreclosure Bar, and a claim to quiet title. The Superior Court (Hon. Fern Flanagan Saddler) granted Wells Fargo leave to amend over Ms. Staab's objection. Wells Fargo then agreed to voluntarily dismiss the Residential Association from the action.

After both parties filed for summary judgment, the Superior Court (Hon. Maurice Ross) granted summary judgment for Wells Fargo, determining that Wells Fargo's claims were timely, the Residential Association's foreclosure and sale of the property to Ms. Staab were void under the Federal Foreclosure Bar, and the

---

[2] Ms. Staab presumably was relying on this court's holding in *Chase Plaza Condominium Association, Inc. v. JPMorgan Chase Bank, N.A.*, 98 A.3d 166 (D.C. 2014) in which we held that, when a condominium association forecloses on its super-priority lien for unpaid assessments pursuant to the District's Condominium Act, D.C. Code § 42-1903.13, all subordinate liens, including the first deed of trust, are extinguished.

Residential Association was not an indispensable party, the absence of which would prevent the court from granting relief. By separate order, the court declared Ms. Staab's deed to the property void, ordered Wells Fargo's deed of trust reinstated in full force and priority nunc pro tunc to its original recordation date, and authorized Wells Fargo to foreclose on the property. Ms. Staab timely appealed.

## II. Analysis

Ms. Staab challenges three of the Superior Court's rulings: (1) its conclusion that the claims for declaratory judgment and quiet title, which Wells Fargo added in its amended complaint, were timely; (2) its decision to grant Wells Fargo leave to amend its original complaint; and (3) its determination that the Residential Association was not an indispensable party to the action. We address each challenge in turn.

### A. Statute of Limitations

First, Ms. Staab contends that Wells Fargo's declaratory judgment and quiet title claims in its amended complaint were untimely and that the Superior Court erred in relying on the six-year statute of limitations for contract actions under HERA, 12 U.S.C. § 4617(b)(12)(A)(i), the statute containing the Federal Foreclosure Bar, instead of a three-year statute of limitations authorized under District and federal

law.  Reviewing Ms. Staab's challenge de novo, *see Govan v. SunTrust Bank*, 289 A.3d 681, 688 (D.C. 2023), we conclude that the new facts and arguments raised in Wells Fargo's amended complaint were a response to Ms. Staab's affirmative defense to the bank's timely initial action for judicial foreclosure and thus were timely even under a three-year statute of limitations.  *See Tovar v. Regan Zambri Long, PLLC*, 317 A.3d 884, 900 (D.C. 2024) (explaining that "[w]here there will be no procedural unfairness, we may affirm a judgment on any valid ground, even if that ground was not relied upon by the trial judge" (internal quotation marks omitted)).[3]

There is no dispute that Wells Fargo timely filed its initial complaint for judicial foreclosure under any plausible statute of limitations.  After Mr. Sutcliffe defaulted on his mortgage, Ms. Staab purchased the property in October 2013.  Wells Fargo filed its complaint for judicial foreclosure in June 2015, less than three years after the condominium foreclosure sale, when its claim against Ms. Staab first accrued.[4]  *See* D.C. Code § 12-301(8) (catch-all limitation period of three years).  In

---

[3] We perceive no such procedural unfairness here, where this court requested supplemental briefing on the statute of limitations arguments.

[4] Though not specifically addressing the initial judicial foreclosure action, Ms. Staab suggests that the limitations period first began to run with the recording of the Notice of Foreclosure Sale in September 2013.  Whether the notice of sale or the sale itself started the clock running makes no difference; Wells Fargo filed its complaint within three years of either date.

its subsequent motion for leave to amend its complaint, Wells Fargo indicated that it sought to add new claims of declaratory judgment and quiet title in order to respond to Ms. Staab's "assert[ions] in her [a]nswer to the [c]omplaint that the [c]ondo [l]ien [s]ale extinguished [Wells Fargo's] lien." Wells Fargo need not have filed an amended complaint with new causes of action; it could have simply responded to Ms. Staab's affirmative defense in its summary judgment motion. *See, e.g., Falconi-Sachs v. LPF Senate Square, LLC*, 142 A.3d 550, 559 (D.C. 2016) ("[A]llegations that seek to avoid or defeat a potential affirmative defense . . . are not an integral part of the plaintiff's claim for relief and lie outside his or her burden of pleading." (quoting 5 Charles Alan Wright, *et al.*, Fed. Prac. & Proc. § 1276 (3d ed. 2004))); *Harris v. Sec'y, U.S. Dep't of Veterans Affs.*, 126 F.3d 339, 343 (D.C. Cir. 1997) ("The pleading requirement [for affirmative defenses under Rule 8(c) of the analogous federal rules] gives the opposing party notice of the defense . . . and permits the party to develop in discovery and to argue . . . various responses to the affirmative defense," including "facts and legal arguments"); Super. Ct. Civ. R. 56(c)(1) (permissible materials supporting a motion for summary judgment are defined broadly and include material "made for purposes of the motion only").

Further, the Superior Court was empowered to declare that the Residential Association's foreclosure sale was void and Wells Fargo's deed of trust was valid as a remedy to Wells Fargo's initial claim for judicial foreclosure, in which the bank

asked for a declaration of sale to satisfy its deed of trust. D.C. Code § 42-812 (if a defendant raises an affirmative defense in a foreclosure action "against the foreclosure of said mortgage or the enforcement of said deed of trust . . . , the further proceedings shall be according to the practice in equity after [the] answer [is] filed"); *see also, e.g.*, *State ex rel. Barker v. Tobben*, 311 S.W.3d 798, 800 (Mo. 2010) (en banc) (explaining that a declaratory order setting aside a deed or instrument constitutes an equitable, rather than legal, form of relief); *Guardian Loan Co. v. Early*, 392 N.E.2d 1240, 1243 (N.Y. 1979) (explaining that "a court of equity may set aside its own judicial sale" where necessary to avoid injustice, though the "power should be exercised sparingly and with great caution").

Ms. Staab argues that the new claims in Wells Fargo's amended complaint should not be considered a response to her affirmative defense because the bank's initial complaint "failed to disclose the existence of Fannie Mae as the real party in interest." She further argues that "[t]he fact that [Wells Fargo] concealed the identity of the real party in interest for the entire duration that the parties litigated the original complaint should preclude by estoppel any claim that the Bank's newly asserted . . . claims could be fairly considered as responses to Ms. Staab's affirmative defenses." But Wells Fargo, as the loan servicer, was itself a real party in interest authorized to bring this action. *See Bartel v. Bank of Am. Corp.*, 193 A.3d 767, 771 (D.C. 2018) (noting "a distinction between the right to enforce an instrument and the ownership

of an instrument"); *Greer v. O'Dell*, 305 F.3d 1297, 1299 (11th Cir. 2002) ("[A] loan servicer is a 'real party in interest' with standing to conduct, through licensed counsel, the legal affairs of the investor relating to the debt that it services."). Fannie Mae's role certainly was essential to Wells Fargo's argument that the deed of trust survived the foreclosure by the Residential Association, but as already discussed above, Wells Fargo was permitted to develop that factual record in response to Ms. Staab's affirmative defense, and we see no reason (nor does Ms. Staab specifically explain) why such development should be precluded.

Ms. Staab also highlights that Wells Fargo's discovery responses, provided before the bank filed its amended complaint, "contained no information about the Bank's new claims asserted in its Amended Complaint," and that the bank generally "failed to disclose that information [about FHFA and Fannie Mae's interest in the property] *until* it filed the Amended Complaint." But nowhere does Ms. Staab allege that she was not given adequate time to respond to these new facts once they were presented or that she was prejudiced by the delay; indeed, she concedes that discovery was not yet completed at the time Wells Fargo moved to amend its complaint, and subsequently more than three years passed between the amended complaint and the parties' competing motions for summary judgment. *See Hackney v. Sheeskin*, 503 A.2d 1249, 1252 (D.C. 1986) (noting that "[discovery] delay could not ordinarily be considered prejudicial per se").

Because Wells Fargo's claims can be characterized as a response to Ms. Staab's affirmative defense and the remedies the Superior Court awarded—declarations that the sale to Ms. Staab was void and that Wells Fargo held a valid deed of trust and was entitled to judicial foreclosure—were among the remedies the court could have ordered to effectuate the foreclosure, we conclude that this action was timely even under a three-year statute of limitations.

### B.     Wells Fargo's Motion to Amend

Ms. Staab also challenges the Superior Court's decision to grant Wells Fargo leave to amend its complaint to add claims related to the Federal Foreclosure Bar, 12 U.S.C. § 4617(j)(3).

As explained *supra* Section II.A., without amending its complaint, Wells Fargo could properly have raised its arguments related to the Federal Foreclosure Bar at the summary judgment stage as a response to Ms. Staab's affirmative defense that the Residential Association's foreclosure extinguished Wells Fargo's deed of trust.  And the Superior Court could have considered those arguments and ordered the Residential Association's sale void and Wells Fargo's deed of trust valid. Accordingly, we need not decide whether the Superior Court erred in granting Wells Fargo leave to amend because, even assuming the court erred, any such error was harmless.  *See Dennis v. Jones*, 928 A.2d 672, 678 (D.C. 2007) ("Reversal is not

warranted where one can say, 'with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error.'" (quoting *Nelson v. McCreary*, 694 A.2d 897, 902 (D.C. 1997))).

## C.  The Residential Association as an Essential Party

Lastly, Ms. Staab argues that the Superior Court erred in ruling that the Residential Association was not an indispensable party under Superior Court Civil Rule 19(a)(1).  In making this argument, Ms. Staab focuses on the purported indispensability of the Residential Association with respect to "Count IV of [Wells Fargo's] Amended Complaint," in which Wells Fargo focused on the fact that the advertisement to the condominium foreclosure sale had stated that the property would be sold subject to the first deed of trust and alleged that any sale to Ms. Staab without that encumbrance was "conducted in a manner inconsistent with a material term of the advertisement" and thus invalid.  Although the Superior Court did not address Count IV of Wells Fargo's complaint, it generally ruled that the Residential Association was not an indispensable party and that the Residential Association's sale of the property was void on other grounds.  Thus we address Ms. Staab's indispensable party claim.

Under Super. Ct. Civ. R. 19(a)(1), the Superior Court must join a party to the

action if (A) "in that person's absence, the court cannot accord complete relief among existing parties," or (B) the missing party "claims an interest relating to the subject of the action" and disposing of the action in their absence may "impair or impede [their] ability to protect the interest" or "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations." We review a trial court's decision that an absent party need not be joined for abuse of discretion "and reverse only if we find that its exercise of discretion was clearly against reason and the evidence." *Simon v. Smith*, 273 A.3d 321, 338 (D.C. 2022) (internal quotation marks omitted).

Ms. Staab has not demonstrated that the Superior Court abused its discretion by failing to join the Residential Association as an indispensable party. The Superior Court was able to grant the relief Wells Fargo requested—a declaration that Ms. Staab's purchase of the property and deed were void "ab initio" and Wells Fargo was entitled to judicial foreclosure—without ordering equitable or monetary relief against the Residential Association. Ms. Staab also has not demonstrated that the Residential Association "claim[ed] an interest" related to the litigation and was "so situated that disposing of the action in [its] absence [might] . . . impede [its] ability to protect [that] interest," *id.* at 338, or leave an existing party subject to "inconsistent obligations," Super. Ct. Civ. R. 19(a)(1)(B)(ii). Indeed, the Residential Association actively disclaimed any interest in the litigation. Wells Fargo joined the Residential

Association as a defendant and it asked to be dismissed.

Ms. Staab's arguments to the contrary are unavailing. First, she argues that the Residential Association's presence was necessary to allow complete relief because it should be required to return the sale price she paid for the property. But the Superior Court did not need to resolve Ms. Staab's potential claims against the Residential Association to adjudicate Wells Fargo's arguments about the validity of the foreclosure sale and its deed of trust. *Cf. Bell v. Westinghouse Elec. Corp.*, 483 A.2d 324, 328 (D.C. 1984) (joint tortfeasors not indispensable parties, though they might be "liable to [defendant] for all or part of any judgment against him"); *see also District of Columbia v. Am. Univ.*, 2 A.3d 175, 184 (D.C. 2010) ("[L]itigation often produces decisions that have effects that extend beyond the parties before the court. That does not mean, however, that every case of potentially broad import requires the joinder . . . of each person and entity that stands to gain or lose from the litigation.").[5]

---

[5] Ms. Staab also had the opportunity to file a cross-claim against the Residential Association, thus ensuring its participation in the present case. *See Raskauskas v. Temple Realty Co.*, 589 A.2d 17, 23 (D.C. 1991) ("A defendant faced with the prospect of multiple actions may be in a position to bring in absent persons . . . by means of defensive interpleader, or by using impleader or asserting a counterclaim. . . . In short, the Rule 19(b) notion of equity and good conscience contemplates that the parties actually before the court are obliged to pursue any avenues for eliminating the threat of prejudice." (brackets omitted)).

Second, Ms. Staab cites to our decision in *EMC Mortgage Corp. v. Patton*, 64 A.3d 182, 188 (D.C. 2013), to argue that "a holder of an interest in real property is indispensable when a judgment could destroy or substantially impair the interest at issue." But she has not shown that the Residential Association has an interest in the condominium that would be affected by the litigation. The Residential Association is not an entity claiming title to the property or a mortgagee whose interest might be extinguished by Wells Fargo's foreclosure sale. Rather, the Residential Association's interest arises from its ability to collect common expenses against any owner of the property, D.C. Code § 42-1903.12, its entitlement to a priority lien for unpaid assessments, *id.* at § 42-1903.13(a), and its right to foreclose on the property to enforce those assessments, *id.* at § 42-1903.13(c); *see also Chase Plaza*, 98 A.3d at 173 (explaining a condominium association's right to impose a lien on owners for failure to pay condominium assessments).[6]

Third, and finally, Ms. Staab points to authority explaining that "[r]escission of a contract, or declaration of its invalidity, as to some of the parties, but not as to others, is not generally permitted." *Ward v. Deavers*, 203 F.2d 72, 75 (D.C. Cir. 1953); *see also Young v. Swafford*, 102 A.2d 312, 313-14 (D.C. 1954). But this

---

[6] The priority status of the Residential Association's lien remains the same regardless of the identity of the foreclosing party. *Wonder Twins Holdings, LLC v. 450101 DC Hous. Tr.,* No. 23-CV-0719, 2024 WL 4846685 at *1 (D.C. Nov. 21, 2024).

principle applies "where rights sued upon arise from a contract." *Young*, 102 A.2d at 313. Courts need not join all parties to a contract "where the rights asserted arise independently of any contract which an adverse party may have made with another," even if the litigation may affect the absent party's ability to "fulfill [that] contract." *Nat'l Licorice Co. v. N.L.R.B.*, 309 U.S. 350, 363 (1940). Wells Fargo's claim that the sale of the property to Ms. Staab was invalid is not based on a right that "arise[s] from" a contract between Wells Fargo and the Residential Association, *see Young*, 102 A.2d at 313, but rather on the deed of trust executed between Wells Fargo and Mr. Sutcliffe.

Accordingly, we conclude that the Superior Court did not abuse its discretion by declining to join the Residential Association as an indispensable party under Super. Ct. Civ. R. 19(a)(1).

### III. Conclusion

For the foregoing reasons, the judgments of the Superior Court are affirmed.

*So ordered*.