*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

No. 16-CV-977

4700 CONN 305 TRUST, APPELLANT,

v.

CAPITAL ONE, N.A., APPELLEE.

FILED 09/13/2018
District of Columbia
Court of Appeals

*Julio Castillo*
Julio Castillo
Clerk of Court

Appeal from the Superior Court of the
District of Columbia
(CAR-593-15)

(Hon. Ronna Lee Beck, Trial Judge)

(Argued January 18, 2018                    Decided September 13, 2018)

*Anthony R. Champ*, with whom *Benny L. Kass* was on the brief, for appellant.

*Anand Ramana*, with whom *Phillip C. Chang* was on the brief, for appellee.

Before BECKWITH and MCLEESE, *Associate Judges*, and FARRELL, *Senior Judge.*

FARRELL, *Senior Judge*: This appeal requires us to decide an issue left open by our recent decision in *Liu v. U.S. Bank Nat'l Ass'n*, 179 A.3d 871 (D.C. 2018), which concerned a foreclosure sale initiated by a condominium association to recover on its super-priority lien for unpaid assessments on a condominium unit. The issue is whether, under the controlling language of D.C. Code § 42-1903.13

(a)(2) (2012 Repl.) at the time of the sale in question, "a lien [foreclosed on] covering a period in excess of six months [of arrearage] . . . is properly conceptualized as a split-lien, which includes a six-month portion entitled to super-priority status [under the statute], or as one lien, all of which is considered to be lower in priority to the first mortgage or deed of trust" encumbering the unit. *Liu*, 179 A.3d at 879 n.9. The question is one of law that we decide de novo. *See Chase Plaza Condo. Ass'n v. JP Morgan Chase Bank, N.A.*, 98 A.3d 166, 172 (D.C. 2014).

## I.

In 2007, Anusha Putty executed a note for $308,750 to finance the purchase of condominium unit 305 at the Parker House, 4700 Connecticut Avenue, N.W. ("the Unit"). Appellee Capital One, N.A. ("Capital One") is the current holder of the note (on which Putty later defaulted) and the beneficiary of the related first deed of trust. By December 2012, Putty had fallen into arrears to the Parker House Condominium Association ("the Association") for some eleven months of unpaid condominium assessments, and in December 2012 the Association recorded a lien on the property in the amount of $6,108.75. The Association's Notice of Foreclosure Sale advertised as one term of sale that the Unit would be sold

"subject to the first deed of trust, for the original amount of approximately $308,000.00 (as of 12/10/07)." The sale, in which the Association sought to recover the eleven-month balance of unpaid assessments, took place in January 2013. Appellant 4700 Conn 305 Trust ("the Trust") was the successful bidder at the sale, buying the Unit for $11,000. The Memorandum of Purchase memorializing the sale, as well as the Trustee's Deed from the Association to the Trust, explained that the Unit had been sold subject to Capital One's first deed of trust.

In January 2015, Capital One filed a complaint for judicial foreclosure on the Unit in Superior Court. The Trust filed counterclaims to quiet title and for slander of title, asserting that the Association's foreclosure on the Unit to enforce its lien for unpaid assessments had extinguished Capital One's first deed of trust. On Capital One's motion for summary judgment, the trial court determined that, whatever the language of D.C. Code § 42-1903.13 (a)(2) might dictate, "the only equitable result" was to require the Trust "to abide by the agreement by which it agreed to be bound," namely to purchase the Unit subject to Capital One's original mortgage and deed of trust.

**II.**

As our prior decisions have explained, § 42-1903.13 (a)(2) provides District of Columbia condominium associations with a "super-priority lien" over first mortgage lienholders that permits an association to collect up to six months of unpaid condominium assessments by way of foreclosure on a defaulting unit. In *Chase Plaza*, *supra*, where the condominium association had sought and obtained six months of unpaid assessments from foreclosure, 98 A.3d at 168, we held that the effect of this enforcement of the "super-priority lien" is that (a) the association may "distribute the proceeds from the foreclosure sale first to satisfy the condominium-assessment lien and then to satisfy any remaining liens in order of lien priority"; and (b) "[a]ny liens [including a first mortgage or first deed of trust] that are unsatisfied by the foreclosure-sale proceeds are extinguished, and the foreclosure-sale purchaser acquires free and clear title." *Id.* at 172. In the more recent case of *Liu*, *supra*, the issue was whether that result changed when, unlike in *Chase Plaza*, a condominium association expressly sold the condominium unit "subject to the first mortgage or first deed of trust" on the unit, while at the same time enforcing its super-priority lien. *Liu*, 179 A.3d at 874. We held that the anti-waiver provision of D.C. Code § 42-1901.07, by "expressly stat[ing] that any right conferred under the Condominium Act may not be waived," "precludes a

condominium association from exercising its super-priority lien while also preserving the full amount of the [first mortgage-holder's] unpaid lien." *Id*. at 878. Because in *Liu* the condominium association had "collected on only the most recent six months of unpaid assessments," we concluded that it had "enforced its super-priority lien at the sale" and that, "if the proceeds of the sale are insufficient to cover the first deed of trust, then the first deed of trust must be considered effectively extinguished," despite the express effort to preserve it. *Id*. at 878-79. As stated earlier, *Liu* did not decide whether the analysis and result would be otherwise if a condominium association sought to recover more than the "six-month portion [of the arrearage] entitled to super-priority status." *Id*. at 897 n.9.

We now conclude that the result is the same in either case. As we explained in *Chase Plaza*, § 42-1903.13 (a) makes condominium assessment liens prior in enforceability to any other lien or encumbrance except, among other things, a previously recorded first mortgage or first trust; but it then "provides the highest priority to liens relating to the most recent six months of condominium assessments," 98 A.3d at 173, by stating:

> The lien shall also be prior to a [first] mortgage or [first] deed of trust . . . *to the extent of* the common expense assessments . . . which would have become due in the absence of acceleration during the [six] months

> immediately preceding institution of an action to enforce the lien.

D.C. Code § 42-1903.13 (a)(2) (emphasis added). Here, Capital One's reading of this provision is as stark as it is simple: The condominium assessment lien, in its view, retains its super-priority status "to the extent" – meaning only *if* – the foreclosure sale seeks recovery of the most recent six months' arrearage; but if it seeks to recoup more in assessments owed, the super-priority is lost and the association has, in effect, enforced only its lien junior to a first mortgage or deed of trust. Appellee Br. at 13 ("[T]he plain language of the statute limits super-priority liens to six months of assessments. Therefore, [the] Parker House [Association's] lien for eleven months of unpaid assessments does not qualify for super-priority status.").

That reading, in our view, engrafts a limitation on subsection 13 (a)(2) that its language will not bear. The provision certainly qualifies how much of the condominium assessment lien enjoys super-priority, but it implies nothing about retention or loss of that priority if the foreclosure seeks to enforce the lien for a greater amount of assessments owed. Rather, as we stated in *Chase Plaza*, the statute "effectively splits condominium-assessment liens into two liens of differing priority," 98 A.3d at 173, which in turn dictates how the proceeds of a sale to

recover the most recent six months' and additional assessments will be distributed, but reflects no intent to nullify the super-priority lien just because both liens are enforced in the same sale.

Creation of the super-priority lien, as we pointed out in both *Chase Plaza* and *Liu*, was intended by the District of Columbia Council to give condominium "associations the maximum flexibility in collecting unpaid condominium assessments." *Chase Plaza*, 98 A.3d at 174 (quoting D.C. Council, Report on Bill 8-65, at 3 (Nov. 13, 1990)). That flexibility would be hamstrung if an association were put to the choice of foreclosing to recoup more than six months of assessments (with attendant loss of its super-priority lien) or limiting the forced sale to the most recent six-months of arrearage. Indeed, on Capital One's reasoning, the same result would obtain if the association accidentally included in its notice of sale an additional month or more of arrearage; the effect still would be erasure of its super-priority lien as to any part of the sale proceeds. Also, the sums an association may recover via foreclosure include "any late charge or interest due and reasonable attorney's fees and costs incurred in connection with the enforcement of the lien." § 42-1903.13 (c)(2). On Capital One's understanding, an attempt to recover any of these items from the sale proceeds would have the

same drastic effect of reducing the super-priority lien to one junior to the first mortgage or deed of trust.

Finally, and perhaps most significantly, if by foreclosing for more than the most recent six months of assessments an association relinquished its super-priority lien, this would be tantamount to what the court in *Liu* held a condominium association may not do expressly or by agreement, namely, "subordinate its super-priority lien to a first deed of trust during a foreclosure sale." 179 A.3d at 879. That, we stated in *Liu*, "would effectively constitute a waiver by the . . . association of its super-priority lien, which is not permitted under D.C. Code § 42-1901.07." *Liu*, 179 A.3d at 879. Even less, we think, should a relinquishment of the super-priority lien that may not even have been intended, *i.e.*, just by seeking to recoup in foreclosure assessments beyond a six-month arrearage, be viewed as compatible with the no-waiver provision we strictly enforced in *Liu*.

We are also unpersuaded by Capital One's argument, advanced in its Supplemental Brief, that a 2017 amendment to § 42-1903.13 by the Council "clearly indicate[s]" the legislature's understanding that the statute always "gave super-priority status only to those liens [foreclosed on] that did not exceed the six-month . . . period of unpaid assessments." That amendment, which we took note of

in *Liu* as well, now "require[s] that the foreclosure sale notice expressly state whether the . . . sale is for the six-month priority lien and not subject to the first deed of trust, or for more than the six-month priority lien and subject to the first deed of trust. D.C. Code § 42-1903.13 (c)(4)(B)(ii)." *Liu*, 179 A.3d at 874 n.2. The present sale, however, took place in 2013, and as Capital One must concede, "ordinarily, the views of a subsequent legislature form a hazardous basis for inferring the intent of an earlier one." *Hargrove v. District of Columbia*, 5 A.3d 632, 637 (D.C. 2010) (brackets and internal quotation marks omitted). Just as in *Liu*, we do not take the 2017 amendment here as an invitation to revise our understanding of § 42-1903.13 (a)(2). The amendment, on its face only a notice provision, presents interpretive challenges of its own as to the Council's current understanding of whether a super-priority lien can be foreclosed on while preserving junior liens, but it falls well short of demonstrating that under the statute as applied to this 2013 sale, an assessment lien forfeits its super-priority merely because additional arrearages (or fees and costs) are sought in the foreclosure. We leave construction and application of the amendment to another day.

**III.**

The net result of this analysis, in keeping with *Chase Plaza* and *Liu*, is that the Association's enforcement of its super-priority lien by foreclosure sale of the Unit to the Trust extinguished Capital One's first deed of trust. But because, as in *Liu* also, (a) the sale price was greatly below the amount of the mortgage and apparent value of the Unit, and (b) the sale by its terms was erroneously conditioned on assumption of the first deed of trust, we are confronted with the issue, left open in *Liu*, of whether the sale should be invalidated on equitable or other grounds. Although the answer to that question would ultimately be subject to our de novo review, *see Chase Plaza*, 98 A.3d at 172, we conclude that it should properly be addressed by the trial court in the first instance, not least because we need the benefit of that court's judgment as to issue preservation. We therefore hold that the order granting summary judgment to the Trust must be vacated and the case remanded for the trial court, aided by the parties, to resolve these issues:

> Was the sale invalid under traditional contract or equitable principles, *see Chase Plaza*, 98 A.3d at 178 & n.8 (stating that a "valid" foreclosure sale terminates lower priority liens and remanding for determination of whether the sale there should be invalidated because the sale price "was unconscionably low"); and

Did Capital One sufficiently preserve a challenge to the
sale's validity in the trial court?

Following resolution of these issues and re-entry of judgment by the trial court,

either party may seek review of that decision by this court.

## IV.

The judgment of the Superior Court is vacated and the case is remanded for

further proceedings in accordance with Part III of this opinion.

*So ordered.*