*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 19-CV-0737

U.S. BANK TRUST, N.A., APPELLANT,

V.

OMID LAND GROUP, LLC, ET AL., APPELLEES.

Appeal from the Superior Court
of the District of Columbia
(CAR-6302-18)

(Hon. Hiram Puig-Lugo, Trial Judge)

(Argued March 30, 2021                    Decided August 4, 2022)

*Melissa O. Martinez*, with whom *Samantha E. Thompson* was on the brief, for appellant.

*Tracy Buck*, with whom *Stephen O. Hessler* and *Ian G. Thomas* were on the brief, for appellee Omid Land Group, LLC.

Before MCLEESE and DEAHL, *Associate Judges*, and KRAVITZ, *Associate Judge, Superior Court of the District of Columbia.*[*]

KRAVITZ, *Associate Judge*:  Appellant U.S. Bank Trust, N.A. appeals from

the trial court's order granting summary judgment in favor of appellee Omid Land

---

[*]  Sitting by designation pursuant to D.C. Code § 11-707(a).

Group, LLC. We vacate the order of summary judgment and remand for further proceedings.

**Factual and Procedural Background**

Rosslyn Snowden purchased a condominium unit at 701 Delaware Avenue, S.W. on May 19, 2005. To finance the purchase, Ms. Snowden took out a mortgage in the amount of $315,000.00 from CTX Mortgage Company, LLC and executed a promissory note, endorsed in blank. Ms. Snowden and Tyrone E. Evans executed a deed of trust on the condominium unit as security for the note. Through a series of assignments, U.S. Bank Trust, N.A. ("U.S. Bank") later became the holder of the note and the beneficiary of the deed of trust.

Ms. Snowden defaulted on the note beginning in May 2009 by failing to make her monthly mortgage payments. In October 2014, Ms. Snowden also became delinquent on monthly condominium assessments she was required to pay to Capital Park Condominium Association ("Capital Park").

Capital Park recorded a lien against Ms. Snowden's unit on February 18, 2016 based on $12,368.04 in unpaid monthly condominium assessments covering

the period October 1, 2014 through December 31, 2016. Capital Park subsequently recorded a notice on December 12, 2016 stating that it would hold a foreclosure sale of Ms. Snowden's unit on January 18, 2017 based on the twenty-seven months of unpaid condominium assessments specified in the lien. The notice recorded on December 12, 2016 stated that the amount of unpaid assessments totaled $14,653.54.

Capital Park published an advertisement for the upcoming foreclosure sale in the *Washington Post* on three dates in January 2017. The advertisement stated: "The property will be sold subject to any prior liens, encumbrances, and/or municipal assessments if any, including subject to the first mortgage lien."

The condominium foreclosure sale went forward as scheduled on January 18, 2017. Bidding for Ms. Snowden's unit began at $16,000.00 and ended with a winning bid, by Omid Land Group, LLC ("Omid"), of $63,000.00. On March 15, 2017, Omid recorded a trustee's deed of foreclosure for unpaid condominium assessments. The deed stated that Omid purchased the unit at the foreclosure sale for $63,000.00 "subject to any prior liens and mortgages, including the first mortgage lien."

U.S. Bank filed a verified complaint for judicial foreclosure on August 31, 2018 against Ms. Snowden, Mr. Evans, Omid, and the United States. The bank alleged in the complaint that Ms. Snowden had been in default on the note since May 2009 and that she owed $545,769.36 as of the date of filing. The complaint identified Omid as the owner of record of the unit based on the trustee's deed of foreclosure recorded on March 15, 2017 but was otherwise silent regarding the condominium foreclosure sale. The United States was named as a defendant based on a federal government lien on the property related to a federal court restitution order against Mr. Evans in the amount of $126,561.87.

Omid filed an answer to the complaint together with an equitable counterclaim on October 15, 2018. Omid asserted that it was the record owner of the property based on the trustee's deed recorded on March 15, 2017 and that a break in the chain of title dating back to 2014 rendered its interest in the property superior to any entity asserting ownership based on an assignment of the note and deed of trust.

U.S. Bank filed an answer and affirmative defenses to Omid's counterclaim on October 23, 2018. The bank denied that the condominium foreclosure sale was

valid, contending that the sale was not conducted in compliance with District of Columbia law and that its terms were unconscionable.

With the agreement of the parties, the trial court entered a Track 2 scheduling order at the initial scheduling conference on December 14, 2018. Among other dates and deadlines, the scheduling order set April 29, 2019 as the close of the discovery period and May 28, 2019 as the deadline for the filing of dispositive motions.

On May 28, 2019, the last day on which dispositive motions could be filed, U.S. Bank filed a motion for leave to file an amended complaint. Appended to the bank's motion was a proposed amended complaint that sought to add Capital Park as a party defendant and to allege new claims requesting a declaratory judgment that the bank's first deed of trust survived the condominium foreclosure sale or, alternatively, that the condominium foreclosure sale was void as a matter of law because Capital Park advertised the sale as "subject to any prior liens and mortgages, including the first mortgage lien" and the sales price was unconscionably low. The amended complaint also alleged a claim of unjust enrichment against Capital Park and Omid and claims of equitable estoppel and breach of contract against Capital Park.

Later the same day, May 28, 2019, Omid filed a motion for summary judgment on both U.S. Bank's complaint for judicial foreclosure and its own equitable counterclaim for declaratory relief. Omid argued that the condominium association's foreclosure sale to recover unpaid condominium assessments, including the six months immediately preceding the sale, extinguished the bank's mortgage lien and gave Omid free and clear title to the property.

The parties filed oppositions to each other's motions, and on June 13, 2019, the trial court issued a written order denying U.S. Bank's motion for leave to file an amended complaint and granting Omid's motion for summary judgment. Regarding the bank's motion for leave to amend, the court stated that the case had been pending for ten months and that the bank had not provided any explanation for its delay in seeking to amend the complaint despite its knowledge, from the beginning of the case, of the condominium foreclosure sale and Omid's claim that the sale extinguished the bank's first deed of trust. The court stated further that the amended complaint proffered by U.S. Bank lacked merit and that an order granting leave to amend would prejudice Omid because the periods for discovery and dispositive motions had expired.

As to Omid's motion for summary judgment, the trial court determined that the amended complaint proffered by U.S. Bank along with its motion for leave to amend was not part of the summary judgment record because it was never accepted for filing, given the court's denial of the bank's motion. The court thus excluded the allegations and evidence referenced in the amended complaint from its consideration and found that U.S. Bank had presented no evidence to support its assertion, made in opposition to Omid's motion for summary judgment, that the condominium foreclosure sale was invalid. The court accordingly entered summary judgment in favor of Omid on U.S. Bank's complaint for judicial foreclosure and ruled in Omid's favor on its counterclaim for declaratory relief, determining, as a matter of law, that the bank's first deed of trust was extinguished and that Omid obtained free and clear title to the property through its purchase at the condominium foreclosure sale.

U.S. Bank filed a timely notice of appeal.[1]

**Discussion**

---

[1] No parties other than U.S. Bank and Omid have participated in the litigation either in the trial court or on appeal.

We begin with the trial court's order granting summary judgment in favor of Omid. Our review of the order is de novo. *Zere v. District of Columbia*, 209 A.3d 94, 98 (D.C. 2019). We apply the same standard the trial court was required to apply in considering whether the motion for summary judgment should be granted. *Kuder v. United Nat'l Bank*, 497 A.2d 1105, 1106-07 (D.C. 1985). We view the evidentiary materials in the record, including any depositions, documents, electronically stored information, affidavits, declarations, admissions, and interrogatory responses, in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Liu v. U.S. Bank Nat'l Ass'n*, 179 A.3d 871, 876 (D.C. 2018); Super. Ct. Civ. R. 56(c). Summary judgment is properly granted only if the record contains no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Radbod v. Moghim*, 269 A.3d 1035, 1041 (D.C. 2022); Super. Ct. Civ. R. 56(a).

It is fundamental, moreover, that an order granting summary judgment cannot stand if the trial court erroneously excluded from its consideration evidence that, either alone or in combination with other evidence before the court, was sufficient to create a genuine dispute as to a material fact. *See Cormier v. District of Columbia Water & Sewer Auth.*, 959 A.2d 658, 663-67 (D.C. 2008). Similarly, an order of summary judgment must be reversed if the trial court misinterpreted the

governing substantive law and a material issue of fact would remain to be tried had the law been properly applied. *Burch v. Amsterdam Corp.*, 366 A.2d 1079, 1084 (D.C. 1976).

We conclude that the trial court's order granting summary judgment in Omid's favor must be vacated. The trial court mistakenly excluded from its summary judgment analysis the amended complaint proffered by U.S. Bank along with its motion for leave to amend. Although the trial court correctly noted that the amended complaint had not been accepted for filing as the bank's operative pleading, the court erred in deciding that the amended complaint—and the allegations and evidence referenced therein—were not part of the materials to be considered in addressing Omid's motion for summary judgment. U.S. Bank expressly stated in its opposition to the motion for summary judgment that it "fully incorporates herein its Motion for Leave to Amend Complaint and its Second Amended Complaint." The allegations and evidence referenced in the bank's proffered amended complaint therefore were part of the summary judgment record—and should have been considered by the trial court in determining whether Omid had established its entitlement to judgment as a matter of law—notwithstanding the court's order denying the bank's motion for leave to file the amended complaint (an order we will address further below).

We could go on to determine whether the evidence the trial court erroneously excluded from its consideration was sufficient, either alone or in combination with other evidence in the record, to create a genuine dispute as to any material fact. We decline to do so, however, because we conclude, in the circumstances, that certain factual and legal questions raised by recent developments in the governing law are best addressed by the trial court in the first instance.

A brief summary of the governing law is helpful here. The District of Columbia Condominium Act authorizes a condominium association to impose a lien against a condominium unit for unpaid assessments. D.C. Code § 42-1903.13(a). The statute grants the association's lien "super-priority" status, with priority over even a first mortgage lienholder, when the association's lien is based on unpaid assessments within the six-month period immediately preceding the institution of an action to enforce the lien. *Id*. at § 42-1903.13(a)(2).

The "super-priority" lien provision of the Condominium Act has been the subject of several recent decisions of this court. We first addressed the provision in *Chase Plaza Condominium Ass'n v. JP Morgan Chase Bank, N.A.*, 98 A.3d 166 (D.C. 2014), a case decided before the condominium foreclosure sale in the matter

now before us. We held in *Chase Plaza* that when a condominium association enforces its lien through a foreclosure sale, the association may distribute the proceeds of the sale first to itself to satisfy the super-priority portion of its lien and then to other lienholders to satisfy any remaining liens in order of lien priority. *Id*. at 172. We held further that a valid foreclosure sale to enforce the association's super-priority lien extinguishes all other liens on the property left unsatisfied by the proceeds of the sale—including a lien based on a first mortgage or first deed of trust—and thereby grants the purchaser at the foreclosure sale free and clear title to the property. *Id*.

We returned to the "super-priority" lien provision of the Condominium Act in *Liu v. U.S. Bank National Ass'n*, 179 A.3d 871 (D.C. 2018), and *4700 Conn 305 Trust v. Capital One, N.A.*, 193 A.3d 762 (D.C. 2018), two cases decided after the condominium foreclosure sale in this case but before the trial court's order of summary judgment. We held in *Liu* that a condominium foreclosure sale to enforce the association's super-priority lien extinguishes the first deed of trust even if the association tried to preserve the first mortgage holder's lien by advertising the foreclosure sale as subject to the first mortgage or deed of trust. 179 A.3d at 878-79. We held in *4700 Conn* that the result is the same—the extinguishment of the first deed of trust—even if the association sought to recover more than the most

recent six-month portion of the arrearage in assessments entitled to super-priority status. 193 A.3d at 764.

Importantly, however, we also determined in *4700 Conn* that, as a matter of equity, the holder of a first deed of trust may seek to avoid the extinguishment of its lien under § 42-1903.13(a)(2) by challenging the validity of a condominium foreclosure sale on the ground that the unit sold at a price "greatly below the amount of the mortgage and apparent value of the unit" and pursuant to terms of sale "erroneously conditioned on [the] assumption of the first deed of trust." 193 A.3d at 766. More recently, we held in *RFB Properties II, LLC v. Deutsche Bank Trust Co. Americas*, 247 A.3d 689 (D.C. 2021), a case decided after the issuance of the summary judgment order in this case, that where there is a dispute over the validity of a condominium foreclosure sale based on the condominium association's first-priority lien—and thus a dispute over whether the sale extinguished the first mortgage holder's deed of trust—the reasonableness of the price paid for the unit at foreclosure must be considered as of the time of the sale rather than the time of the litigation. *Id*. at 692.

We review the trial court's summary judgment order with these legal rules and developments in mind.

As previously noted, the trial court granted summary judgment in favor of Omid without considering the allegations and evidence referenced in the amended complaint proffered by U.S. Bank in support of its motion for leave to amend. The bank's amended complaint alleged, among other things, that the condominium foreclosure sale was invalid in light of the erroneous statement in the Capital Park's Advertisement of Sale—that the property was being sold subject to any prior liens and mortgages, including the first mortgage lien—and what U.S. Bank asserted was the resulting insufficient and unconscionably low sale price.

The summary judgment record, properly defined, contained evidence supportive of both factual assertions underlying U.S. Bank's contention. The Advertisement of Sale, in the record as part of an exhibit to Omid's motion for summary judgment, stated, erroneously, that "[t]he property will be sold subject to any prior liens, encumbrances, and/or municipal assessments if any, including subject to the first mortgage lien." The Trustees' Deed of Foreclosure for Unpaid Condominium Assessments, also in the record, both as an exhibit to the bank's initial complaint and as part of an exhibit to Omid's motion for summary judgment, similarly misrepresented the effect of the foreclosure sale on the bank's deed of trust, stating that the property was sold "subject to any prior liens and mortgages, including the first mortgage lien." Finally, the note and a computation

in the bank's initial verified complaint for judicial foreclosure showing the amount owed on the note as of the date the complaint was filed (August 31, 2018) established that the $63,000.00 sale price was only 20% of the amount of the initial mortgage on the property ($315,000.00) and a significantly smaller percentage of the amount owed on the mortgage ($545,769.36) at the time the bank initiated this litigation.

Under *RFB Properties*, however, the reasonableness of the sale price paid at the condominium foreclosure sale must be considered as of the time of the sale (January 18, 2017) rather than the time of the litigation. Because we had not yet decided either *Liu* or *4700 Conn* as of the date of the sale, it was unknown to the parties at the relevant time whether the sale would extinguish U.S. Bank's first deed of trust even though the Advertisement of Sale said the sale was subject to all prior liens, including the first mortgage lien, and even though Capital Park was foreclosing on the property based on an arrearage in assessments covering more than the six months immediately preceding the sale. All of these uncertainties, and perhaps others, could have affected the parties' respective assessments of the risks attendant to the sale and, thus, of the reasonableness or unreasonableness of the sale price. *See RFB Properties*, 247 A.3d at 697 ("[A] contract to purchase

property at a foreclosure sale, like all contracts, involves the assessment of risks." (internal quotation omitted)).

It is for the trial court to determine, in the first instance, and based on an accurate understanding of the summary judgment record and the governing law, whether Omid has established beyond genuine factual dispute that the sale was valid so as to extinguish U.S. Bank's first deed of trust under *Chase Plaza* and its progeny. *See 4700 Conn*, 193 A.3d at 766 (remanding for the trial court to consider, in the first instance, the validity of a condominium foreclosure sale challenged on equitable grounds). We accordingly vacate the order granting summary judgment in favor of Omid and remand for further proceedings.

On remand, the trial court may choose to reopen the summary judgment record to allow the parties to present evidence relevant to the temporal analysis required by *RFB Properties*. The record currently contains virtually no evidence of the parties' beliefs and expectations at the time of the foreclosure sale regarding the likely effect of the sale on U.S. Bank's first deed of trust, and the trial court may conclude, in its discretion, that additional evidence will assist its consideration of the risks facing the parties at the time of the sale and, ultimately, of the reasonableness or unreasonableness of the sale price.

Before addressing Omid's motion for summary judgment on remand, however, the trial court should reconsider its denial of U.S. Bank's motion for leave to amend the complaint. Rule 15(a)(3) of the Superior Court Rules of Civil Procedure provides that a trial judge "should freely give leave [to amend] when justice so requires." We have emphasized that Rule 15(a)(3) must be applied liberally to ensure that cases are "decided upon the merits rather than upon technical pleading rules." *See Killingham v. Wilshire Invs. Corp.*, 739 A.2d 804, 807 (D.C. 1999) (quoting *Int'l Tours & Travel, Inc. v. Khalil*, 491 A.2d 1149, 1152 (D.C. 1985)); *see also Pellerin v. 1915 16th St., N.W., Coop. Ass'n, Inc.*, 900 A.2d 683, 688 (D.C. 2006) (noting "this jurisdiction's well-established policy favoring resolution of cases on the merits" (internal quotation omitted)). At the same time, and as the trial court correctly noted, leave to amend is not automatic, and several factors must be considered in the exercise of the court's discretion, including (1) the number of previous requests to amend, (2) the length of time the case has been pending, (3) the existence of bad faith or dilatory reasons for the request, (4) the merit of the proffered amended pleading, and (5) any prejudice to the non-moving party. *Nat'l Ass'n of Postmasters of the U.S. v. Hyatt Regency Washington*, 894 A.2d 471, 477 (D.C. 2006) (citing *Pannell v. District of Columbia*, 829 A.2d 474, 477 (D.C. 2003)).

We review a trial court's decision to grant or deny leave to amend a pleading only for abuse of discretion, *Flax v. Schertler*, 935 A.2d 1091, 1105 (D.C. 2007), and we rarely disturb a ruling if, as here, the trial court identified and addressed the factors required by our decisions. We are concerned, however, that the trial court appears to have conducted its analysis of the factors based on an inaccurate understanding of some of the pertinent facts.

For example, the trial court placed great weight on U.S. Bank's failure to provide an explanation for its delay in seeking leave to amend the complaint, stating that the bank "has known about the Condo Sale for the entirety of this case" and that "Omid's Answer included an equitable counter-claim requesting the Court to enter declaratory judgment in favor of Omid that Plaintiff's first Deed of Trust was extinguished and that Omid obtained free and clear title to the subject property." It is true that U.S. Bank was aware of Omid's purchase of the property at the time the bank filed its complaint. But Omid's answer did not contain an equitable counterclaim alleging the extinguishment of the bank's first deed of trust under D.C. Code § 42-1903.13(a)(2) and/or *Chase Plaza*, as the trial court seemed to believe. To the contrary, Omid's counterclaim alleged it was a gap in the bank's chain of title that gave the condominium association's lien priority and Omid a superior ownership interest following the foreclosure sale.

We are similarly concerned about the trial court's consideration of the merit of U.S. Bank's proffered amended complaint. The trial court stated summarily that the bank "did not include any evidence beyond conclusory allegations to show the Court that there is any merit of the proffered amendments." This was not an accurate statement. As discussed previously, the amended complaint alleged, based on properly authenticated documentary evidence in the record, that the condominium foreclosure sale was invalid because of Capital Park's erroneous statements in the Advertisement of Sale and what U.S. Bank contended was the insufficient and unconscionable sale price paid by Omid.

The amended complaint, moreover, alleged new claims of unjust enrichment, equitable estoppel, and breach of contract. The trial court did not even mention these claims in its one-sentence dismissal of the merit of the amended complaint. *See Johnson v. United States*, 398 A.2d 354, 364 (D.C. 1979) ("[T]he determinations committed to the trial court's discretion are rational acts of decision-making. An informed choice among the alternatives requires that the trial court's determination be based upon and drawn from a firm factual foundation. Just as a trial court's action is an abuse of discretion if no valid reason is given or can be discerned for it, so also it is an abuse if the stated reasons do not rest upon a specific factual predicate." (internal citations omitted)).

## Conclusion

For the foregoing reasons, the trial court's order granting summary judgment in Omid's favor is vacated and the case is remanded for further proceedings not inconsistent with this opinion.

*It is so ordered.*