*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters.  Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 22-CV-0005

NEW PENN FINANCIAL, LLC, D/B/A SHELLPOINT MORTGAGE SERVICING, APPELLANT,

V.

LASHAN D. DANIELS, *et al.*, APPELLEES.

Appeal from the Superior Court
of the District of Columbia
2016-CA-002755-R(RP)

(Hon. Robert R. Rigsby, Trial Judge)

(Argued May 9, 2023        Decided August 8, 2024)

*Benjamin W. Perry*, with whom *Andrew J. Narod* was on the brief, for appellant.

*Lashan Daniels* did not file a brief or participate in this appeal.

*Ian G. Thomas*, with whom *Tracy Buck* was on the brief, for appellee Tyroshi Investments, LLC.

*Thomas C. Mugavero*, with whom *Rafiq R. Gharbi* was on the brief, for appellee Brandywine Crossing I Condominium.

*Marcella Coburn*, with whom *Karl A. Racine*, Attorney General for the District of Columbia, *Caroline S. Van Zile*, Solicitor General, *Ashwin P. Phatak*, Principal Deputy Solicitor General, *Carl J. Schifferle*, Deputy Solicitor General, and *Caroline W. Tan*, Assistant Attorney General, were on the brief, for appellee the District of Columbia.[*]

Before EASTERLY, MCLEESE, and DEAHL, *Associate Judges*.

EASTERLY, *Associate Judge*: Appellant New Penn Financial, LLC, d/b/a Shellpoint Mortgage Servicing ("Shellpoint") appeals from the Superior Court's order granting summary judgment in favor of defendants/appellees Lashan Daniels, the former owner of a condominium unit with a mortgage that had been serviced by Shellpoint's predecessor in interest; Tyroshi Investments, LLC ("Tyroshi"), the purchaser of Ms. Daniels's condominium unit at a foreclosure sale; and Brandywine Crossing I Condominium ("Brandywine"), the condominium association that conducted the foreclosure sale. Shellpoint argues that (1) the court procedurally erred by sua sponte granting summary judgment for each of the three defendants/appellees without giving Shellpoint notice and an opportunity to argue against this disposition; (2) the court substantively erred in granting summary judgment as to Shellpoint's claim that Brandywine's foreclosure sale should be set aside on equitable grounds; and (3) the notice provision of the D.C. Condominium Act is facially unconstitutional.

---

[*] The District of Columbia was added as a party to this appeal pursuant to D.C. App. R. 44(b).

We affirm. Although we agree that the Superior Court's summary judgment ruling violated Rule 56(f) of the Superior Court Rules of Civil Procedure, we conclude that the court's departure from the rules was harmless because Shellpoint's claim that there were equitable grounds for setting aside the foreclosure sale fails as a matter of law. Because Shellpoint did not preserve its constitutional challenge in Superior Court, we decline to address it in the first instance on appeal.

## I.     Factual and Procedural Background

In 2007, Ms. Daniels purchased a condominium on Brandywine Street, SE, for $255,000, and financed her purchase with a $204,000 loan from Countrywide Home Loans. Ms. Daniels executed a promissory note and deed of trust granting Countrywide Home Loans a lien on the property. The deed of trust was subsequently assigned to Bank of America.

Two years after purchasing her condominium, Ms. Daniels stopped paying the condominium assessments, and the condominium association, Brandywine Crossing I Condominium, eventually recorded two Notices of Condominium Lien for Assessments Due, collectively covering fees due for the period of September 21, 2009, through December 31, 2011. In May 2014, Brandywine recorded a Notice of

Foreclosure Sale pursuant to D.C. Code § 42-1903.13, stating that Ms. Daniels owed $7,838.50 in unpaid assessments, plus fees and costs, and scheduling a foreclosure sale for June 24, 2014. The advertisement for the sale, published in the *Washington Times*, stated that the property would be sold "subject to any . . . superior liens, encumbrances, and municipal assessments, if any, the further particulars of which may be announced at time of sale." Brandywine twice notified Bank of America of the impending sale. This notice appears to have consisted of the recorded Notice of Foreclosure Sale, sent by certified mail, which made no representations regarding the status of the deed of trust.

The foreclosure sale was held on June 24, 2014, and Ms. Daniels's condominium was sold to the highest bidder, Tyroshi Investments, LLC, for $5,000. The Memorandum of Purchase, signed that day, described the sale price as "$5,000 subject to senior lien." The Trustee's Deed, recorded about a month after the foreclosure sale, stated that the condominium was purchased "for the amount of $5,000.00 and subject to the balance on a first deed of trust in the face amount of $204,000.00."

At the time of the sale, D.C.'s Condominium Act authorized condominium associations to foreclose upon a unit for nonpayment of condominium assessments and gave the highest priority lien status to the most recent six months of unpaid

assessments. The statute made this six-month lien "prior to a mortgage or deed of trust." D.C. Code § 42-1903.13(a)(2). In August 2014, just two months after the sale of Ms. Daniels's condominium, this court decided *Chase Plaza Condominium Association v. JPMorgan Chase Bank, N.A.*, 98 A.3d 166 (D.C. 2014), affirming the super-priority status of a condominium association's six-month lien under the statute and clarifying that foreclosing upon this lien extinguished all junior liens, including the first deed of trust. This court continued to clarify ambiguities in the operation of D.C. Code § 42-1903.13(a)(2) in the ensuing years, first in *Liu v. U.S. Bank National Association*, 179 A.3d 871 (D.C. 2018) (holding that the deed of trust was extinguished when a condominium association foreclosed upon its super-priority lien even if the sale was advertised as subject to that deed of trust) and then in *4700 Conn 305 Trust v. Capital One, N.A.*, 193 A.3d 762 (D.C. 2018) (holding that when a condominium association foreclosed on more than six months of fees, it created a split lien, six months of which were still entitled to super-priority status).

In the meantime, Ms. Daniels, in addition to falling behind on her condominium assessments, had failed to make payments on her mortgage. In July 2015, more than a year after Brandywine's foreclosure sale of her unit, Bank of America purported to assign the deed of trust to Shellpoint, and in April 2016, Shellpoint filed a suit for judicial foreclosure against Ms. Daniels. Shellpoint subsequently amended its complaint twice, adding Tyroshi and Brandywine as

defendants and adding to its judicial foreclosure claim two counts for declaratory relief against all defendants. The new second count sought a determination that the deed of trust had not been extinguished by the foreclosure sale and remained a viable lien on the property. The new third count asked that the foreclosure sale be found void as a matter of law because, inter alia, it "was conducted in a manner inconsistent with a material term of the advertisement" and resulted in a sales price that "was insufficient and/or unconscionable." Brandywine filed a Motion to Dismiss or in the Alternative Motion for Summary Judgment on the claims asserted against it (Counts Two and Three), which Shellpoint opposed. In a July 2019 order, the Superior Court rejected a statute of limitations challenge to Counts Two and Three; ruled that the foreclosure sale had extinguished the first deed of trust as a matter of law, necessitating the dismissal of Count Two; and ruled that Shellpoint had stated a claim that the terms of the sale were unconscionable under Count Three.

Two years later, in August 2021, the Superior Court issued a Corrective and Omnibus Order responding to several pending motions, including a Motion to Dismiss filed by Ms. Daniels, who was proceeding pro se, and a Motion for Default Judgment against Tyroshi, filed by Shellpoint. The Superior Court also used this order to "correct[]" its July 2019 order regarding Brandywine's Motion to Dismiss. Now applying a summary judgment standard, the court ruled that Shellpoint's arguments for voiding the sale under Count Three of its Second Amended Complaint

failed as a matter of law because the sale price could not be unconscionably low under this court's recent decision in *RFB Properties II, LLC v. Deutsche Bank Trust Company Americas*, 247 A.3d 689 (D.C. 2021) (holding that the unconscionability of the sale price of real property must be assessed based on conditions at the time of the sale). Reasoning that because "Tyroshi purchased the Property at a Condo Foreclosure Sale [on] June 14, 2014, prior to *Chase Plaza* and its progeny . . . , Tyroshi undoubtedly purchased the Property erroneously believing it to be subject to the balance on a first Deed of Trust . . . as advertised in the Notice of Foreclosure and announced at the Condo Foreclosure Sale."[1] The court also treated Ms. Daniels's pro se Motion to Dismiss as a Motion for Summary Judgment, which it then granted, ruling that Shellpoint's claim of judicial foreclosure against her in Count One failed as a matter of law because the deed of trust had been extinguished and Ms. Daniels no longer held title to the property. Though Tyroshi had filed no dispositive motion of its own, the Superior Court indicated that it too was entitled to summary judgment.

Shellpoint filed a Motion to Alter or Amend the Corrective and Omnibus

---

[1] The court was mistaken. As noted above, the advertisement for the sale did not mention the first deed of trust; instead, it said only that the property would be sold subject to "any . . . superior liens." Shellpoint conceded in its complaint that the same description was announced at the foreclosure sale.

Order, which the Superior Court denied.  This appeal followed.

## II.     Analysis

Shellpoint makes three arguments to this court.  First, Shellpoint argues that the Superior Court procedurally erred in sua sponte granting summary judgment for each of the three defendants/appellees without giving Shellpoint notice and an opportunity to argue against this disposition as required by Superior Court Civil Rule 56(f).  Second, Shellpoint argues that the Superior Court substantively erred in granting summary judgment as to Count Three of its Second Amended Complaint, because the sales price of the condominium was unconscionably low or, in the alternative, because Brandywine's alleged misrepresentations that the property was sold subject to the first deed of trust created other equitable grounds for setting aside the foreclosure sale.  Third, Shellpoint argues for the first time on appeal that the notice provision of the D.C. Condominium Act is facially unconstitutional.

We review the procedural and substantive propriety of the Superior Court's summary judgment ruling de novo.  *District of Columbia v. Place*, 892 A.2d 1108, 1110-11 (D.C. 2006).  Because it is unpreserved, we decline to address Shellpoint's constitutional challenge to the Condominium Act.  *See Pajic v. Foote Props., LLC*, 72 A.3d 140, 145 (D.C. 2013) (explaining that absent some showing that consideration of an unpreserved issue is "necessary to prevent a clear miscarriage of

justice," this court will not consider unpreserved arguments in the first instance on appeal); *see also Lewis v. Hotel & Rest. Emps. Union, Local 25*, 727 A.2d 297, 301 (D.C. 1999) (citing *Kremens v. Bartley*, 431 U.S. 119, 128 (1977)) (explaining that "courts should generally avoid ruling on constitutional questions unless they have no other choice").

## A.    The Superior Court's Sua Sponte Summary Judgment Order

Two years after ruling that Shellpoint could litigate its claim that Brandywine's foreclosure sale of Ms. Daniels's condominium unit should be set aside on equitable grounds, the Superior Court sua sponte granted summary judgment to all three defendants/appellees on Counts One and Three of Shellpoint's Second Amended Complaint. The Superior Court did so without first advising Shellpoint that it was considering this disposition or giving Shellpoint an opportunity to argue against it. The Superior Court did not explain in its sua sponte order why it believed it possessed the authority to act in this manner. But in its order denying Shellpoint's motion to alter or amend its summary judgment ruling, the court indicated that Shellpoint had already had a reasonable opportunity to defend against summary judgment when it responded to Brandywine's initial 2019 Motion to Dismiss or in the Alternative For Summary Judgment and that the court was authorized, under Superior Court Civil Rule 54(b), to revise any order before a final

adjudication of the case. In its brief to this court, Shellpoint argues that the court's ruling violated Superior Court Civil Rule 56(f). We agree.[2]

Superior Court Civil Rule 56(f) authorizes the Superior Court to sua sponte grant summary judgment "for a nonmovant," "on grounds not raised by a party," or "on its own after identifying for the parties material facts that may not be genuinely in dispute," but only after the court "giv[es] notice and a reasonable time to respond." This language, added in 2017, *see* D.C. Super. Ct. R. Promulgation Order 17-02 (March 29, 2017, Effective June 1, 2017), codified a well-established principle that "[a] court may grant summary judgment sua sponte when it appears that a party cannot prevail on a claim . . . as a matter of law" *only* "so long as the losing party was on notice that it had to come forward with all of its evidence." *Thomas v. District of Columbia*, 942 A.2d 1154, 1158 (D.C. 2008) (italics omitted); *see Tobin v. John Grotta Co.*, 886 A.2d 87, 91 (D.C. 2005) ("Before the trial court expanded the relief appellees had requested to include summary judgment on all the counts, appellant was entitled to the opportunity to come forward with all her evidence showing triable issues of fact on any or all of them." (internal quotation marks omitted) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986))); *see also*

---

[2] Shellpoint also asserts that the court's sua sponte summary judgment ruling "violated Shellpoint's right to procedural due process of law." Because we agree with Shellpoint's rule-based argument, we need not address its constitutional one.

*Radbod v. Moghim*, 269 A.3d 1035, 1042 (D.C. 2022) ("As did *Tobin* and *Thomas* before its adoption, Rule 56(f) plays a critical access-to-justice role in the civil process by guaranteeing all litigants meaningful notice and a fair opportunity to defend the legal sufficiency of their claims and defenses before judgment can be entered against them."). Because the Superior Court never gave Shellpoint notice or an opportunity to present all of its evidence to show it had a triable claim that Brandywine's foreclosure sale should be set aside on equitable grounds, the court's order sua sponte granting summary judgment to all three defendants on the claims remaining in Shellpoint's Second Amended Complaint was in error.

Contrary to the Superior Court's assessment, Shellpoint did not already have sufficient notice that the court might grant summary judgment to all three defendants by virtue of Brandywine's 2019 Motion to Dismiss or in the Alternative for Summary Judgment. Needless to say, Brandywine's motion gave Shellpoint no notice that summary judgment might be granted either to Ms. Daniels—who had only filed a two-page, pro se motion to dismiss which cited no law and expressed confusion as to why Shellpoint was suing her—or to Tyroshi—who never filed a dispositive motion of any sort. *See Radbod*, 269 A.3d at 1042-43 (holding that the Superior Court violated Rule 56(f) when, without giving plaintiff/appellant advance notice, it granted summary judgment in favor of a co-defendant who had not filed a motion for summary judgment); *Embassy of Pakistan, IIS v. Lenkin Co. Mgmt.*, 996

A.2d 817, 819 (D.C. 2010) (holding that the Superior Court erred by failing to give the plaintiff/appellant the "mandatory procedural protection" under Rule 56 of advance notice that it was converting a motion to dismiss to a motion to summary judgment).[3]

Moreover, even as to Brandywine, Shellpoint did not receive Rule 56(f) compliant notice, because the court issued its sua sponte ruling based "on grounds not raised by a party," namely this court's 2021 decision in *RFB Properties*. *See Radbod*, 269 A.3d at 1042 (Superior Court failed to comply with Rule 56(f) where it "granted summary judgment in favor of the defendants on all claims related to the

---

[3] As noted above, prior to the 2017 amendments, Rule 56 did not contain an explicit notice requirement for sua sponte orders. In both *Embassy of Pakistan*, 996 A.2d at 819, and *Tompkins v. Washington Hosp. Ctr.*, 433 A.2d 1093, 1099 (D.C. 1981), this court cited a prior version of Rule 56(c) which mandated a ten-day notice period between the filing of a motion for summary judgment and the date set for a hearing and held that a ten-day notice period was likewise required when a court inquired sua sponte whether summary judgment was warranted. Although Rule 56 no longer specifies the precise length of the notice period—the rule was amended in 2017 to mirror Federal Rule of Civil Procedure 56, *see* D.C. Super. Ct. R. Promulgation Order 17-02, Comment, Rule 56 (March 29, 2017, Effective June 1, 2017)—these cases still inform our understanding of Rule 56(f) and its requirement that notice and a meaningful opportunity to respond be given. In particular, it is still true that "[a]n opposition to a summary judgment motion often requires extensive preparation of both legal and factual arguments as well as affidavits, and the results of failing to win on an opposition to a motion for summary judgment are drastic" and that a notice provision of some sort "is needed to assure that the summary judgment process is fair." *Embassy of Pakistan*, 996 A.2d at 819 (quoting *Tompkins*, 433 A.2d at 1099).

Virginia property for a lack of personal jurisdiction, even though" only one defendant had moved for summary judgment and their motion "raised no challenge to the court's personal jurisdiction"). Although Brandywine had generally challenged Shellpoint's unconscionability claim in its 2019 Motion to Dismiss or in the Alternative Motion for Summary Judgment, that was two years before this court held in *RFB Propertie*s that the unconscionability of price is assessed at the time of the foreclosure sale, 247 A.3d at 692. Thus, there were significant differences between the arguments Brandywine raised in its 2019 motion and the bases on which the court granted summary judgment in 2021. *Cf. Tompkins*, 433 A.2d at 1100 (holding that, where one party filed a *second* motion for summary judgment, the non-moving party was entitled to the statutorily-required notice period for responding to such a motion where "there were significant differences between the first and second motions").

The Superior Court's exclusive reliance on Rule 54(b), in lieu of Rule 56(f), for the proposition that it may revise any order before a final adjudication of the case was misplaced. Rule 54(b) provides instruction on when a final judgment is reached in an action involving multiple claims or parties. It explains that, generally, all claims as to all parties must be resolved in order for a court to enter a final judgment and then states that "[a]ny order or other decision . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the

action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Super Ct. Civ. R. 54(b). To be sure, Rule 54(b) allows a court to revisit and revise an order or decision in a case where it has not yet entered a final judgment. But it does not speak to the precise procedure by which such revision may be made— in many if not most cases one of the parties will have invited the court to revisit an earlier order—and it certainly does not override the particular directive of Rule 56(f) to provide the parties notice when the court sua sponte contemplates that summary judgment on one or more claims may be warranted.

Our analysis does not conclude, however, with our determination that the Superior Court committed a procedural error in sua sponte granting summary judgment for all three defendants/appellees without notice to Shellpoint. "When reviewing [a] trial court's judgment, . . . we disregard 'errors or defects which do not affect the substantial rights of the parties.'" *Carter v. District of Columbia*, 980 A.2d 1217, 1224 (D.C. 2009) (quoting D.C. Code § 11-721(e) and concluding that the trial court's failure to give the plaintiff adequate time to respond to the District's motion for summary judgment was harmless); *see also Thomas*, 942 A.2d at 1158-59 (declining to overturn a summary judgment order for lack of notice under Rule 56, on the basis that, "even if [the appellant] did not understand or envision that the court might consider whether to grant summary judgment sua sponte, it seems clear that

he was not prejudiced by any lack of notice") (italics omitted).

Our assessment of harm turns on the legal viability of the claims on which summary judgment was prematurely granted. We focus on Shellpoint's claim that Brandywine's foreclosure sale was inequitable and thus void as a matter of law (Count Three) because, if the sale was valid, the first deed of trust was indisputably extinguished, *see Chase Plaza*, 98 A.3d at 175, leaving Shellpoint with no claim against Ms. Daniels for judicial foreclosure (Count One).

## B.     Equitable Bases for Voiding the Foreclosure Sale

Shellpoint argues that the Superior Court's summary judgment ruling was substantively incorrect and that it was entitled to have Brandywine's foreclosure sale set aside on two grounds: the $5,000 sales price for Ms. Daniels's condominium was unconscionably low and other equitable considerations arising from Brandywine's alleged misrepresentation that the condominium was sold subject to the first deed of trust justified voiding the sale. We may uphold the Superior Court's ruling only if we conclude that there were no genuine issues of material fact and that, viewing the evidence in the light most favorable to Shellpoint, the defendants were entitled to judgment as a matter of law. *See Ward v. Wells Fargo Bank, N.A.*, 89 A.3d 115, 126 (D.C. 2014).

The Superior Court correctly held as a matter of law that, under *RFB Properties*, the purchase price was not unconscionably low. Brandywine's foreclosure sale of Ms. Daniels's condominium took place in June 2014. This court did not make clear until August 2014 that a foreclosure sale held pursuant to the Condominium Act extinguished the first deed of trust, *see Chase Plaza*, 98 A.3d at 175, and we only clarified in 2018 that a mortgage lien would be extinguished even if the condominium association advertised the foreclosure sale as subject to the first deed of trust, *Liu*, 179 A.3d at 879, or foreclosed on more than six months of unpaid assessments, *4700 Conn*, 193 A.3d at 764-65. Employing the "proper temporal lens" described in *RFB Props.*, we must assess the alleged unconscionability of the sale price "at the time of the . . . foreclosure sale." 247 A.3d at 697. At that time, in June 2014, when the law was still unclear, the parties may well have believed the property was sold encumbered by a first deed of trust. *Cf. U.S. Bank Tr., N.A. v. Omid Land Grp., LLC*, 279 A.3d 374, 380 (D.C. 2022) (explaining that "[b]ecause we had not yet decided either *Liu* or *4700 Conn* as of the date of the sale, it was unknown to the parties" at the time of the condominium foreclosure sale whether it "would extinguish [the] first deed of trust even though the Advertisement of Sale said the sale was subject to all prior liens").

Indeed, the Trustee's Deed, recorded a month after the foreclosure sale, described the purchase "for the amount of $5,000.00 and subject to the balance on a

first deed of trust in the face amount of $204,000.00." (The actual liability on the deed of trust may have been slightly higher—as of April 2016, Shellpoint alleged an outstanding balance of $213,851.72.) Taken together, the $5,000 purchase price and the value on the mortgage were substantially higher than the 2015 tax-assessed value of $131,380, and even relative to Ms. Daniels's original purchase price of $255,000, could not plausibly be viewed as "so grossly inadequate as to shock the conscience," as Shellpoint suggests.[4] *See, e.g.*, *Nat'l Life Ins. Co v. Silverman*, 454 F.2d 899, 914 n.32, 916 (D.C. Cir. 1971) (affirming an order of summary judgment and rejecting an argument that a sales price of $900,000 was inadequate when the property was allegedly worth "in excess of [t]hree [m]illion"). In short, there is no evidence in the record that would indicate the property was sold for an unconscionably low price under our existing case law, and Shellpoint has proffered no additional evidence that would suggest a different outcome. We thus conclude that, even viewing the evidence in the light most favorable to Shellpoint, there is no genuine issue of

---

[4] Shellpoint asserts that there is "no 'hard and fast rule' as to what sale price, relative to the fair market value of the property, constitutes an unconscionable one," but points to the example of *Steward v. Moskowitz*, 5 A.3d 638, 652 (D.C. 2010), where this court "found the purchase price . . . to be grossly inadequate where the property sold for less than one-third of its tax assessed value." Again, taking the $5,000 purchase price together with the (at least) $204,000 deed of trust, Ms. Daniels's condominium was sold—plausibly, in the eyes of potential bidders— for well *above* the tax-assessed value and more than eighty percent of Ms. Daniels's original purchase price.

material fact as to whether the condominium was sold for an unconscionably low price.

Shellpoint argues that *RFB Properties* "was wrongly decided and premised upon flawed reasoning because there was no intervening change in the law such that the circumstances at the time of the sale are any different than they are now." Shellpoint is correct that the language of the statute has not changed. But the temporal analysis required by *RFB Properties* focuses on the change in parties' *perceptions* of the value of a property—not necessarily a change in the law itself. The statutory text of the Condominium Act only goes so far in explaining how a condominium association's enforcement of its super-priority lien impacts other subordinate liens, and this court, beginning with *Chase Plaza*, did significant interpretive work to clarify that impact. This interpretation inarguably impacted parties' perceptions of the value of foreclosed-upon condominiums like Ms. Daniels's. Finally, notwithstanding any argument that *RFB Properties* was wrongly decided, we are bound by our decision in that case. *M.A.P. v. Ryan*, 285 A.2d 310, 312 (D.C. 1971) ("[N]o division of this court will overrule a prior decision of this court . . . [S]uch [a] result can only be accomplished by this court en banc." (footnote omitted)).

Alternatively, Shellpoint argues that the Superior Court should have

considered other equitable factors—factors it alternatively refers to as "fraud, oppression, and unfairness," "unconscionability," and "surprise"—before granting summary judgment for the appellees on Count Three. Throughout its brief, Shellpoint variously alleges that Brandywine "affirmatively" or "material[ly] misrepresent[ed]" that the property was subject to the first deed of trust securing the $204,000 mortgage, when in fact the Condominium Foreclosure Sale extinguished the first deed of trust. Shellpoint asserts that this misrepresentation about the status of the first deed of trust chilled bidding and thus depressed the sale price, making the sale inequitable.

We have no reason to question that some version of this equitable claim could be made, and we agree with Shellpoint that some of this court's older precedent would seem to support such a claim. *See Hotel Lafayette v. Pickford*, 85 F.2d 710, 714 (D.C. Cir. 1936) (acknowledging that "[a] foreclosure sale may be set aside where there has been misconduct on the part of the trustees affecting its fairness"); *Hunt v. Whitehead*, 19 App. D.C. 116, 125 (D.C. Cir. 1901) ("Nothing short of such inadequacy of price as would shock the conscience of the court, or furnish ground for believing that there was fraud, collusion, or bad faith, or gross neglect of duty, in making the sale, will justify the court in setting [a foreclosure sale] aside upon . . . ground[s]" of inequity); *cf. Fitzgerald v. Fitzgerald*, No. 1148, 1872 WL 15271, at *3 (D.C. Feb. 21, 1872) (hypothesizing that if court-appointed trustees had "declared

to bidders upon the property that it was free from all incumbrances and that the purchaser would receive a title in fee simple, and it subsequently turned out that there were incumbrances on the property, this court would undoubtedly set aside the sale").

We do question whether Shellpoint properly pled this argument in Superior Court—while Count Three of the Second Amended Complaint alleges that the foreclosure sale "was conducted in a manner inconsistent with a material term of the advertisement," it does not specifically allege misrepresentation, much less fraud. *See Phone Recovery Servs., LLC v. Verizon Washington, DC, Inc.*, 191 A.3d 309, 322 (D.C. 2018) (explaining that fraud is subject to a heightened pleading requirement and, in order to survive dismissal, "a plaintiff must 'state with particularity the circumstances constituting fraud or mistake' by providing the 'time, place, and contents of the false representations, the facts misrepresented, and what was obtained or given up as a consequence of the fraud.'" (quoting *United States ex rel. Barko v. Halliburton Co.*, 952 F. Supp. 2d 108, 112 (D.D.C. 2013))). But, in any event, we conclude that Shellpoint did not have a viable claim under this theory.

The record does not support Shellpoint's argument. In order to have chilled bidding, and thus to have plausibly served as a basis for unwinding the sale on equitable grounds, any misrepresentation by Brandywine about the status of the first

deed of trust would have to have been made before the sale. But Shellpoint cannot point to any evidence of any such presale misrepresentation. Nor has Shellpoint ever asserted—either in its Motion to Alter or Amend the Superior Court's order, or in its briefing before this court—that it is aware of additional evidence that would have proven such a misrepresentation, were the court to give Shellpoint the opportunity to present it.

The only evidence in the record related to Brandywine's representations regarding the terms of the sale prior to its occurrence comes from the advertisement published in the *Washington Times*. This advertisement, which Shellpoint refers to in its complaint, states that the property will be sold "subject to any . . . superior liens, encumbrances, and municipal assessments, *if any*, the further particulars of which may be announced at time of sale." (emphasis added). The seemingly boilerplate reference to "any" superior liens comes nowhere near a misrepresentation that the property was in fact encumbered, *specifically*, by Bank of America's $204,000 deed of trust. Moreover, the fact that *Chase Plaza*, *Liu*, and *4700 Conn* have since made clear that no lien was superior to Brandywine's super-priority lien does not turn this generic statement into a misrepresentation. As *RFB Properties* explains, the effects of a super-priority lien were a wholly uncertain proposition before this court interpreted the Condominium Act. Advertising the sale as "subject to any superior lien" was a sufficiently neutral statement to allow all parties to draw

their own conclusions, particularly in the face of a legal uncertainty, and Shellpoint has not proffered at any point in the litigation of this case that additional evidence that would suggest a clearer misrepresentation in advance of the sale exists.

Nor can Shellpoint claim that misrepresentations were made on the day of the sale itself, given its assertion in the Second Amended Complaint that "[a]t the Condo Foreclosure Sale the auctioneer announced that the sale was subject to *any* superior liens"[5] (emphasis added)—the same generic language that was used in the advertisement, and once again lacking any reference to any specific mortgage or amount. *See Kreuzer v. George Washington Univ.*, 896 A.2d 238, 242 (D.C. 2006) (statements of fact made in the plaintiff's complaint are "judicial admissions" which the plaintiff "may not . . . foreswear").

All other evidence in the record about the terms of the sale comes from after the sale was completed. The Memorandum of Purchase, signed by the buyer and seller, commemorates the sale for the price of "$5,000 subject to senior lien," without any additional information regarding the size of that "senior lien." Only the Trustee's Deed—executed July 19, 2014, nearly a month *after* the foreclosure sale— explicitly states that the property was purchased "subject to the balance on a first

---

[5] The Superior Court relied on this assertion in its July 2019 order, when it found "[t]he terms of [the] Condo Foreclosure Sale expressly stated that the sale was subject to any superior liens and the auctioneer announced the same."

deed of trust in the face amount of $204,000." But given the timing of its execution, this deed can only support the proposition that, a full month after the sale, the first deed of trust was known to the buyer, Tyroshi, and that Tyroshi now believed it was taking the property subject to that mortgage. The deed cannot on its own create a dispute of fact as to whether there was a misrepresentation prior to the sale that would necessitate setting the sale aside on equitable grounds.

Some of the cases cited by Shellpoint rely on theories of "surprise" or mistakes of fact. *See, e.g.*, *Hunt*, 19 App. D.C. at 127-28 (property owner was in negotiations for a loan to pay off the balance on her mortgage prior to a foreclosure sale; negotiations unexpectedly fell through shortly before the sale, but potential bidders had already been advised that the sale would be postponed). By contrast, in the present case, there was nothing, factually, that changed about the sale. Brandywine advertised the sale of the property as subject to *any* superior liens. As already discussed, the relevant parties may have assumed that this meant it was subject to Bank of America's first deed of trust; *Chase Plaza* and its progeny clarified that this was not the case. All parties had the same factual information before and after the sale.[6] Only their understanding of the law changed.

---

[6] In its argument that the Superior Court's summary judgment ruling was procedurally incorrect, Shellpoint suggests that discovery had not yet closed at the time the court ruled in August 2021. The record is unclear on this point. The

In short, nothing in the record as it stands indicates the property was advertised before or during the sale as subject *specifically* to the first deed of trust. Nor has Shellpoint ever proffered additional evidence that could prove such a misrepresentation. Because the sales price itself was not unconscionably low, and no evidence has been proffered of any misrepresentation or other equitable ground that might support setting aside the sale, we conclude that the appellees were entitled as a matter of law to judgment on Count Three and Count One of Shellpoint's Second Amended Complaint, and any procedural error by the Superior Court was harmless.

### III. Conclusion

For the reasons set forth above, the Superior Court's summary judgment order

Superior Court granted a number extensions of the discovery deadline, with the last extension setting a deadline of May 4, 2020, to allow depositions of Tyroshi and Brandywine, and Shellpoint represented to the court in its last consent motion to extend discovery, dated March 3, 2020, that "[w]ritten discovery has been largely completed." Shellpoint asserts that the COVID-19-related foreclosure moratoria "effectively put[] a halt to the continuation of Shellpoint's judicial foreclosure action" prior to this date and that the court therefore "indicat[ed] that the parties would be allowed to proceed with discovery" at an April 2021 status conference. Nowhere in the record, however, do we see any indication that the discovery deadline was in fact extended beyond May 2020. In the transcript pages to which Shellpoint cites, the court sets deadlines for two motions but makes no statements about ongoing discovery. In any event, Shellpoint never argued to the Superior Court that its summary judgment ruling was procedurally improper because it had not had the chance to complete discovery and, before this court, it fails to identify the information it had yet to obtain in discovery.

is affirmed.

*So ordered.*